MARY KENNEDY

*v.*

WILLIAM KENNEDY.

1. RESIDENCE—*of wife follows that of her husband.* In law, the domicil of the husband is that of his wife, and her residence follows that of the husband.

2. DIVORCE—*desertion.* When a husband acquires a new home, it is the duty of his wife to go with him, and if she refuses, without justification, for two years, the husband will be entitled to a divorce.

3. SAME—*condonation.* In the case of condonation, there is an express or implied agreement that the party forgiving does so only on the condition that the party forgiven will not repeat the offense, but will perform all marital duties the relation imposes.

4. Where a wife refused to go with her husband to a new home acquired by him, and, without cause or justification, deserted him for more than two years, it was *held,* that the husband cohabiting with her, at her brother's house, on one occasion within the two years, when she still refused to go and live with him, did not have the effect to bar him of the right to a decree of divorce.

5. In questions of desertion, the intentions of the person absenting himself · has a large, if not a controlling influence. If the party leaves with the intention of returning, and continues to provide for his wife and family, and is kept away over two years, this will be no desertion or abandonment, within the meaning of the divorce act.

APPEAL from the Circuit Court of Grundy county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Messrs. HILL & DIBELL, and Mr. J. N. READING, for the appellant.

Mr. P. A. ARMSTRONG, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellee, in February, 1877, filed his bill against appellant to obtain a divorce, for alleged desertion for more than two years. It appears the parties were married in 1842, and had lived together as man and wife until in October, 1874; that appellee then changed his residence from his old homestead to a new one, about three-fourths of a mile distant; that he, with the consent of his wife, conveyed his old homestead to her brother, Patrick Kenrick, in July, 1873, she joining in the conveyance, but when he came to move to his new home, in the autumn of the next year, she refused to go with him, stating that she would not leave the old home, but would remain there with her brother, and that she would not live with him any longer to assist him in accumulating money to be left to his heirs in Ireland.

It appears there were no children born of the marriage; that their married life had been happy and contented; that Patrick and Catharine Kenrick, a brother and sister of appellant, had lived with and formed a part of the family of appellee, and that he and Kenrick had, as partners, carried on farming and stock raising, becoming owners of real estate and personal property in common; that on a division, Kenrick took the old farm or homestead, and appellee the new or prairie farm; that there was no unpleasant altercation between appellee and appellant, but she positively refused to go with him to his new home, and persistently refused to do so for more than two years from the time he went there, and before he filed his bill.

The defense set up, and relied on in the answer, is, that he deserted her by removing to his new home; that she was

willing to live with him at their old home, but was unwilling to go to the new one. She charges generally, that he became addicted to the use of liquor, which at times rendered him helpless, and she feared to live with him alone and away from her brother and sister; that she had urged him to remain and live with her and her brother and sister on the old farm, but he refused; that during the two years, he at one time returned, and remained two days and one night, with her and her brother, at the old place; that she then solicited him to return and live with them.

The evidence shows, that appellee, in the month of August, 1875, at the funeral of his sister-in-law, Catharine Kenrick, went to Patrick Kenrick's on the night of the wake, and remained and attended the funeral the next day, and returned and remained during the next night, sleeping in the same bed with appellant, and then leaving. This seems to have been the only occasion when he visited this family. She on three or four occasions went to his farm, and remained a short time, but did not offer to live with him there, but was willing to do so at her brother's place, but not otherwise. The jury found a verdict in favor of complainant, and the court rendered a decree granting a divorce, from which defendant appeals.

In the case of *Davis* v. *Davis*, 30 Ill. 180, the general and well recognized rule of law was announced, that the domicil of the husband is that of the wife. And the rule was recognized in the case of *Ashbaugh* v. *Ashbaugh*, 17 Ill. 476, where it was said, the residence of the wife follows that of the husband. Nor are we aware that a different rule has been announced where the common law obtains. This, then, made appellee's new home appellant's home, and she deserted it and him for the period of more than two years, without any just cause. Under the marriage relation it was her duty to go with him, but this she refused to do, without justification. And this entitles appellee, under the statute, to the decree of divorce, unless he has done some act to bar his right.

Then, does the fact that he, within the space of two years,

went to her brother's and remained with her during one night and a portion of two days, change the attitude of the case? He was not only willing, but anxious that she should live with him.    He had provided her a home surrounded with ordinary means of enjoying comfort, and desired her to come and live with him at his home, but she at all times refused, unless he would live with her brother on his farm, in his house, and of course in a subordinate position.

In questions of desertion, the intention of the persons absenting themselves has a large, if not a controlling influence. Important business interests not unfrequently require the absence of the husband as long or longer than the statutory period, and yet, if he left with the intention of returning, and continues to provide for his family, he does not thereby lose his residence, nor can he be held to have deserted or abandoned his wife, within the meaning of the divorce law.    And the same would no doubt be true of the wife, if her absence were necessary and proper, for a similar period.    This, under the statute, would be considered reasonable cause, where there is an intention of returning.    After such absence has commenced, if the party should change the intention and determine not to return, from that time forward, however, it would be held a desertion, without reasonable cause.    Whilst the intention of the absent party will be considered, to determine whether it is wilful, which it must be within the requirements of the statute, the intention of the other party, not acted on or attempted to be carried into effect, can not matter.

Here, appellant's absence was wilful, persistent, and continued for more than two years.    She never offered to go to and live with him at any time after they separated.    Her mind seemed to be fixed and determined not to go to and live with him, and his going to and remaining with her during one night and a portion of two days, made no change in that purpose.    Her desertion, then, was clearly wilful, within the meaning of the statute.

Nor did he, so far as this record discloses, ever consent to

her absence. On the contrary he seems at all times to have wished her to return and live with him. But it is urged, that by cohabiting with her at her brother's he condoned or forgave her former desertion. We think that such an inference is not warranted from the fact. It was not then or at any other time agreed that she would return and perform all her marital duties. It was, at most, only a recognition of a portion of those duties, wholly refusing the performance of all the others, and there was a refusal of all afterwards. In cases of condonation, there is an express or implied agreement, that the party who forgives the other, does so only on the condition that the party forgiven will not repeat the offense, but will perform all marital duties the relation imposes. Here, appellant neither agreed to, nor did she offer to, or show the least disposition to do so in the future.

It can not be inferred from that single act, nor is there any evidence to show, that she agreed or intended to permanently resume their marriage relations, or that it was understood that her absence might continue. Such an inference is not warranted. Had she gone to his house and they had so cohabited, then there would have been entirely a different question presented. So, if she had offered to return, and he had refused to receive her to his home. We are of opinion that the evidence shows a wilful desertion on the part of appellant, without any reasonable cause, within the meaning of the statute, for the space of more than two years, and that the continuity of the time was not interrupted, and that the decree is right, and must be affirmed.

*Decree affirmed.*