ALBERT WEBER, Appellant, v. ANNA WEBER, Respondent.

Springfield Court of Appeals, December 22, 1916.

1. **DIVORCE: Condonation: Definition.** The term "condonation" in divorce proceedings means a forgiveness and pardon after a full knowledge of past wrong, fault or deficiency in the express or implied condition that same will not be repeated.

2. ———: ———: ———. The term "condonation" as used in divorce proceedings has no different meaning than when the term is applied to any other duty or obligation, such as grows out of the relation of master and servant, lessor and lessee, etc.

3. ———: ———: ———: **Less Strictness in Case of Wife.** The doctrine of condonation is not applied to the rights of the wife with such strictness as to the rights of the husband. It rarely bars her redress.

4. ————: **Condonation: Evidenced by Cohabitation.** In cases of adultery the evidence of cohabitation as proof of condonation is more nearly conclusive than in cases of cruelty and indignities.

5. ————: **Cross-bill and Answer.** Action by husband against wife for divorce. The wife had formerly sued for divorce, but dismissing her suit because of promises made her by the husband, she had returned to him. Without any new offense on her part, the present action is begun by her husband. The wife has a right to be heard on her cross-bill and answer.

6. ————: **Condonation: Conclusiveness of Evidence.** Action by husband for divorce there being an answer and cross-bill by wife. Evidence of condonation on wife's part considered not conclusive.

Appeal from Texas County Circuit Court.—*Hon. L. B. Woodside,* Judge.

Affirmed.

*Hiett & Scott* and *Lamar & Lamar* for appellant.

*James F. Hudson* and *Barton & Impey* for respondent.

STURGIS, J.—The plaintiff brought suit for divorce against defendant, his wife, and she filed an answer and cross-bill. The court heard the evidence and found the issues for defendant, that she was the innocent and injured party, and granted her a divorce and allowed alimony. The plaintiff, appealing, concedes that the evidence sustains the charges made by the cross-bill, but contends that the evidence conclusively shows a condonation by the defendant. The plaintiff, in his abstract and brief, says that he admits that the allegations of defendant's cross-bill were proven and, if the things therein alleged were not by the defendant condoned, or if they were condoned and the plaintiff by any act of his revoked the condonation and revived the former grounds for divorce, then the judgment should be affirmed. The plaintiff therefore only brings to this court such part of the evidence as bears on these issues, and we commend this manner of presenting only those issues and the record necessary to an understanding thereof

which are relied on for reversal, rather than encumbering the record here with a mass of useless matter.

The plaintiff, in admitting the proved truth of defendant's grounds for divorce, as alleged in her crossbill, admits that he has been guilty of offering such indignities as rendered her condition as his wife intolerable; that he has committed adultery since the marriage; that he has been addicted to habitual drunkenness for the space of a year; that he has been guilty of such cruel and barbarous treatment as to endanger defendant's life. The defendant further alleges that she finally separated from plaintiff on October 29, 1914; that prior to June 12, 1912, plaintiff had been guilty of these same grounds of divorce and that she then separated from him and filed a suit for divorce in St. Louis, their then home; that defendant did then condone such offenses and dismissed her suit on plaintiff's solicitation and agreement to thereafter treat her with kindness and affection; that they then moved to Texas county; that plaintiff thereafter did not so treat her, but was thereafter guilty of each and all of the grounds for divorce above mentioned. These allegations were also proven, as plaintiff admits.

The facts with reference to the alleged condonation are about these: A short time after defendant was compelled, because of plaintiff's bad conduct and cruel treatment of her and the long continued and grievous indignities heaped upon her, to separate from him October 29, 1914, she went to her friends and old home in St. Louis. In a short time plaintiff followed her there and importuned her on promises of future good behavior to again return to Texas county and live with him. Defendant testified that he came to see her and that they talked the matter over, and talked with an officer of a trust company as to his making a deed to her of certain of his property; that she consulted a lawyer as to this but that "when I considered how many times I had gone back and he had not kept his promise, I finally decided I would not go back. I have not been back to Texas county since I left. Mr. Weber came to

the house in St. Louis and I could not get shut of him. I slept with him one night at my sister's and one night at his sister's, but I have never come back to live with him." Plaintiff evidently not considering that there had been any condonation, for condonation is mutual, in January, 1915, filed his suit for divorce, alleging therein that defendant had been guilty of such indignities toward him as to render his life intolerable, enumerating various acts and words of defendant, which, if true, would have entitled him to a divorce.

The plaintiff relies particularly on two cases in this State as establishing the rule that after one married party has been wronged in a way that would warrant a divorce, if he or she voluntarily cohabits with the other, it is a condonation of the offense—Twyman v. Twyman, 27 Mo. 383; Harper v. Harper, 29 Mo. 301. In the first of these cases the court said: "The specific acts of misconduct alleged in the petition, no doubt, if recent and supported by the necessary evidence, would, under our law, warrant a decree separating a wife from her husband. The main charges of cruelty alleged in the petition occurred some years before the institution of this suit, and there seems to have been a long cessation of injurious conduct on the part of the husband." In the other case the court held no more than that it would not grant a wife a divorce when it appeared that at the time she brought her suit she was yet living with her husband as his wife. These cases certainly do not hold that there are no exceptions to the general rule stated and indeed hold no more than that long continued voluntary cohabitation affords conclusive evidence of condonation. The term "condonation" as used in divorce proceedings has no different meaning than when used with reference to the violation of any duty or obligation and is used in the law of master and servant, lessor and lessee, etc. It means a forgiveness and pardon after full knowledge of past wrong, fault or deficiency on condition, express or implied, that same will not be repeated. In divorce proceedings, cohabitation offers

195 M. A.—9

strong evidence of such pardon and forgiveness of past conjugal offenses, increasing in probative force with the fullness of knowledge of the offense committed and the length of time continued. In most cases where the cohabitation is long continued, it will be taken as conclusive evidence. Much must depend, however, on the circumstances of the particular case. It is said that the doctrine of condonation is not applied with such strictness to the rights of the wife as it is to the husband, and is rarely held to bar her redress. [Bishop's Marriage and Divorce, secs. 368-410; Armstrong v. Armstrong, 32 Miss. 279, 289; Odom v. Odom, 36 Ga. 286, 318; Gardner v. Gardner, 2 Gray (Mass.) 434, 441; Johnson v. Johnson (N. Y.), 14 Wend. 637, 643.] The nature of the conjugal offense has much to do with this question. In cases of adultery condonation from cohabitation is more nearly conclusive than in cases of cruelty or indignities. In Wolverton v. Wolverton (Ind.), 71 N. E. 123, 126, the court said: "A distinction has properly been made between actions for divorce on account of conjugal infidelity and actions for divorce for cruelty, and it has been held by courts of other states that a condonation of extreme and repeated cruelty will not be inferred from a single act of sexual intercourse. [Phillips v. Phillips, 1 Ill. App. 245; Cox v. Cox (Sup.), N. Y. Supp. 367; Reynolds v. Reynolds, 34 How. Prac. 346; Doe v. Doe, 52 Hun, 405, 5 N. Y. Supp. 514.]" In Morton v. Morton (Cal.), 49 Pac. 557, 558, this statement is made: "The point that plaintiff must be held to have condoned defendant's offenses, because she lived and cohabitated with him after the action was commenced and until the summons was served, cannot be sustained. In an action for divorce on the ground of cruelty there can be no condonation unless there is a reconciliation between the parties, a remission of the matrimonial offenses, and an express agreement to condone. 'Condonation implies a condition subsequent; that the forgiving party must be treated with conjugal kindness.' " The court, in McLanahan v. McLanahan (Tenn.), 56 S. W. 858, 860, discussed this question fully and we quote from

that opinion: " 'A wife's cohabitation,'' says Mr. Bishop in 2 Bish. Mar., Div. & Sep., 306, 'with her husband, after he inflicted the last act of cruelty of which she complains, will not necessarily, in all cases, bar her suit.' 'Condonation' is not an absolute term, which can be applied alike to all circumstances. Its application will vary, as the offense said to have been condoned may vary. If the offense be adultery, then knowledge of the fact by the defendant, followed by cohabitaion, is *ipso facto* condonation. But if, for instance, it is habitual drunkenness on the part of the husband which is the ground for the application, when does condonation from cohabitation take place? The term 'habitual' implies growth through various and increasing stages, until drunkenness becomes a fixed or established habit. Until this degree is reached it is not a ground for divorce. Could it be, with any show of reason, maintained that when this degree is reached the wife would be repelled because she had remained loyally with her husband, suffering, and yet striving to save him, until the final crisis is reached? Unquestionably not. So of cruelty, as was said in Collins v. Collins, 10 Scotch Sess. Cas. (4th Ser.) 250. Cruelty is cumulative, admitting of degrees and augmenting by addition, so that it may be condoned, and even forgiven, for a time, and up to a certain point, without any bar, in sense or reason, to bringing it all forward when the continuance of it has rendered it no longer condonable. Cruelty, extending through series of years, must consist of numerous acts, many of which might, and possibly would, be of themselves of a character not to warrant a divorce, yet, constantly recurring, they would indicate a wicked mind, and taken altogether, would show that the condition of the sufferer was unsafe, and beyond the point of further forbearance." As was said by Chancellor WALWORTH in Wood v. Wood, 2 Paige 110, "Condonation by implication, from the fact of cohabitation, ought not to be held a strict bar against the wife. She is in a measure under the control of her husband; and this distinction will be found running through all the English cases on

the subject." In Thomas v. Thomas, 2 Cold. 124, the wife was refused a divorce on the ground of adultery because of cohabitation after knowledge of the fact, but she was granted a decree on the ground of cruelty, although she remained under his dominion and in conjugal association with him until four months before the litigation began. [See, on this point, Guthrie v. Guthrie, 26 Mo. App. 566, 572.]

There is much significance, also, in the fact that the husband did not consider that there had been any mutual condonation of past offenses, for without any new offense by the wife, he brought this divorce suit and on his shoulders must rest the responsibility for commencing this litigation. If there had been a condonation he was the first to violate it. The wife was summoned into court on false charges made by him for the purpose of securing a divorce, and when so in court she had a right to be heard on her answer and cross-bill. [Tackaberry v. Tackaberry, 101 Mich. 102, 104, 59 N. W. 400.]

The evidence as to the nature of the cruelties and indignities inflicted on the wife is not before this court, but we have reason to believe and should presume that same extended to the time of the final separation and that this wife was indeed long-suffering and endured much. The mere fact that even then she considered with some seriousness returning to her home and husband ought, not to be held against her too severely. She did not become reconciled to him and did not pardon his past offenses and return to him in the sense which the law holds conclusively to be a condonation. Like Lot's wife when fleeing from the iniquities of Sodom, she looked back, but since she then fled on, we will not pronounce her doom.

The judgment will, therefore, be affirmed. *Robertson, P. J.,* and *Farrington, J.,* concur.