# THOMPSON *v.* THOMPSON

### No. 2638

July. 8, 1926.                                   247 P. 545.

1. FRAUD.

One relying on fraud must specifically plead it.

2. DIVORCE—WRITTEN AGREEMENT BETWEEN SEPARATED HUSBAND AND WIFE TO LIVE TOGETHER AGAIN HELD "CONDONATION" OF ALL PRIOR GRIEVANCES, THOUGH THERE WAS NO SUBSEQUENT COHABITATION.

Written agreement between separated husband and wife to live together again, by which husband gave wife certain property, and she. dismissed suit against him, *held* condonation of all prior grievances, notwithstanding there was no cohabitation afterward; "condonation" being forgiveness by aggrieved spouse of past offenses on condition that they will not be repeated.

3. DIVORCE.

Condonation may be established either by conduct or express agreement.

4. DIVORCE. ˉ

Divorce suit is equitable, and not in nature of quasi criminal proceeding, in view of Const. art. 6, sec. 6.

5. DIVORCE.

Condonation *held* to restore parties to original marital relationship so that divorce complaint, based on subsequent desertion, need not allege such restoration.

6. DIVORCE.

Burden is on aggrieved spouse to show repetition of misconduct to defeat condonation.

7. DIVORCE.

Supreme court is bound by jury's finding, supported by substantial evidence, that plaintiff had established bona fide residence within county.

8. EVIDENCE.

Sustaining objection to question on cross-examination as to source of income of plaintiff in divorce suit *held* not abuse of discretion, where counsel asking it declined to state his theory of its admissibility.

9. DIVORCE.

Testimony in divorce suit as to whether witness would have known if plaintiff had been away during certain six-month period, admitted to establish residence, *held* not prejudicial.

10. DIVORCE.

Objection to testimony as to where parties lived when they were married 20 years before *held* properly sustained.

11. TRIAL.

Court *held* not required to give requested instruction on point fully and correctly covered by his own instruction.

See (1) 27 C. J. sec. 144, p. 28, n. 50; (11) 38 Cyc. p. 1331, n. 74;

p. 1711, n. 19; (2-10) 19 C. J. sec. 23, p. 22, n. 87; sec. 192, p. 83, n. 31, 32; sec. 285, p. 114, n. 86; sec. 331, p. 127, n. 23; sec. 336, p. 128, n. 46; sec. 370, p. 146, n. 77; sec. 480, p. 195, n. 39; sec. 481, p. 195, n. 40.

APPEAL from Second Judicial District Court, Washoe County; *Geo. A. Bartlett,* Judge.

Suit for divorce by Silas Stuart Thompson against Elizabeth D. Thompson. From a judgment for plaintiff, and an order denying defendant's motion for new trial, she appeals. **Affirmed.**

*Ayres & Gardiner, James T. Boyd,* and *Peter Breen, Jr.,* for Appellant:

As each party charged other with desertion, their conduct before entering into stipulation was material. Com. v. James, 9 Pa. Co. 145.

Divorce is quasi criminal proceeding. Stafford v. Stafford, 41 Tex. 111.

Generally in all criminal cases evidence of other offenses is admissible to show intent or malice. State v. Vertrees, 33 Nev. 510; 15 C. J. 598.

Promise without intent to perform is fraud. 26 C. J. 1093; Ivancovich v. Stern, 14 Nev. 341.

Condonation is forgiveness on condition offense will not be repeated, and lasts only as long as offending party behaves. Averbuch v. Averbuch, 141 P. 701. It must be voluntary act of injured party, not induced by fraud, force or fear. Ordinarily there must be renewal of marital relation. Promise of forgiveness or unaccepted offer to resume cohabitation is insufficient. 19 C. J. 83, 85, 843.

Evidence as to bona fides of respondent's residence in Washington, D. C., was pertinent to show bona fides of his residence here. Residence implies fixed, not temporary, abode. Presson v. Presson, 38 Nev. 206; McLaughlin v. McLaughlin, 48 Nev. 155.

Exclusion of competent evidence on question in issue is reversible error. 4 C. J. 1003; Zelavin v. Tonopah, 39 Nev. 86.

*Brown & Belford* and *W. M. Kennedy,* for Respondent:

No act happening prior to condonation can be set up as defense to action brought by forgiven party upon cause arising after condonation. Eames v. Eames, 111 Ill. App. 655; Rogers v. Rogers, 142 P. 1150.

Condonation is forgiveness on condition offending spouse shall thereafter treat other with kindness. If condition is broken former offense is revived. Resumption or offer in good faith to resume marital relations after desertion terminates desertion and new ill treatment upon part of former deserter will not revive former desertion. 2 Schouler, Marriage and Divorce (6th ed.), sec. 1703.

Resumption of cohabitation is conclusive evidence of implied condonation, but is not essential in express condonation. Schouler, sec. 1696; Bush v. Bush, 205 S. W. 895.

One may not both accept benefits and avoid onus of agreement. Alexander v. Winters, 23 Nev. 473; Moore v. Mng. Co., 42 Nev. 164.

By accepting benefits of agreement made with husband wife is estopped from claiming his offer and promise were not made in good faith. Legal conclusion that facts pleaded constitute estoppel does not have to be alleged. Johnson v. Schumpf, 239 P. 401.

## OPINION

By the Court, COLEMAN, C. J.:

This is a suit for divorce on the ground of desertion. The defendant in her answer denied the desertion charges, and alleged that the plaintiff had deserted her. The case was tried to a jury, which brought in a verdict in favor of the plaintiff. The court entered a decree accordingly. The defendant has appealed from the judgment and from the order denying her motion for a new trial. The parties will be referred to as in the trial court.

The parties formerly lived in Washington, D. C., where they were intermarried in 1903. About the year 1916 the defendant brought a suit for divorce against the plaintiff in one of the courts of the city of Washington, where a decree was entered in her favor for separate maintenance in the sum of $65 per month. Thereafter negotiations were entered upon for an adjustment of the differences between the parties, which resulted in the execution by them, on November 4, 1920, of an agreement in writing wherein it is recited that the plaintiff was desirous that his wife should forgive and forget the past, and resume marital relations with him, and that he had agreed to provide support for her and to furnish her a suitable home, and to be a true and loving husband to her, and that she on her part had agreed to resume marital relations with him, and to be a true and loving wife to him. It is further recited in said written agreement that as an evidence of good faith on the part of the husband he had conveyed to her by deed a certain house and lot in Washington, free and clear of all liens and incumbrances. In consideration of the facts thus recited and the agreements thus entered into, the parties further agreed that the said suit in Washington should be dismissed on the condition that, in the event the said husband should fail to properly support and maintain his wife, or that she should be forced to leave him by reason of his misconduct, or if he should desert or abandon her, she should have the right to again apply for maintenance and support.

Mr. Thompson instituted this action on December 15, 1921, wherein he alleges that, in pursuance of the agreement recited, he conveyed on November 4, 1920, to Mrs. Thompson the house, and that he provided a home in every way suitable to the station in life of the parties, and invited Mrs. Thompson to come and resume marital relations pursuant to the terms of said agreement, and that she refused to do so, and that her refusal constituted desertion. The defendant contends, on the other hand, that she went to the home provided by the plaintiff, and that he upbraided her for making the charges embraced in her bill in the suit in which was entered

the decree in her favor in the Washington court, and otherwise so demeaned himself as to justify her in not reestablishing the marital relations with plaintiff.

In support of the defense offered, the defendant here contends that the plaintiff, in entering into the compromise agreement mentioned, was not sincere, and that it was done with the view of producing the situation which she claims thereafter developed. In support of this contention, the defendant offered evidence of alleged misconduct of which it is contended the plaintiff was guilty prior to the entry of the decree in the Washington suit. The trial court sustained an objection which was made to this testimony upon the ground that whatever misconduct the plaintiff may have been guilty of, and which was the basis for the Washington suit, was condoned by the agreement settling the differences of the parties which resulted in the dismissal of that suit. The question of alleged error of the court in ruling upon said objection is the one most strenuously urged upon our consideration.

In disposing of the question suggested, it must be borne in mind that, while the answer of the defendant alleges "that said plaintiff was not sincere in his representations or in his desire to again resume marital relations with the defendant, * * * but that his·sole object was to escape the fixed alimony of $65 per month by conveying her a small house," there is no allegation of fraud nor a tender of a reconveyance to the plaintiff of the house conveyed to her pursuant to the said agreement. Defendant's theory in support of her contention that the court erred in its ruling is stated in counsel's brief as follows:

"Appellant's theory of the case is that, inasmuch as each party charges the other with desertion, and the question turns on 'who was the deserter,' the conduct of the parties toward each other before the entry of the stipulation was material to the issues of the case much as in a case of assault, former assaults or threats may be introduced to enable the jury to determine 'who was the aggressor.'

"That, as we allege certain facts which would make it greatly to the advantage of respondent to enter into the stipulation the parties did enter into, and also alleged facts questioning the good faith of respondent, and that the stipulation was sought at his instance in order to obtain an unfair and unjust advantage of appellant, we should have been entitled to go back into the conduct of the parties toward each other before the signing of the stipulation to determine whether the reconciliation was in good faith, and also to have the jury instructed concerning the admissibility of the pleadings."

1. In support of defendant's theory, counsel devote many pages to discussion of alleged facts, tending, as it is contended, to show fraud on the part of the plaintiff in entering into the agreement for the dismissal of the Washington suit. As to this contention we think it may be disposed of with the brief statement that, where one seeks to rely upon fraud, it must be specifically pleaded. There is no allegation of fraud in the answer. We think it proper, however, to state that the agreement in question was drawn by the counsel who conducted defendant's Washington suit, and, so far as appears, she was fully protected.

2, 3. As to the theory urged by counsel for the defendant in support of their contention that to enable the court to determine who was the deserter the conduct of the parties toward each other prior to the settlement of the Washington case was competent, we are clearly of the opinion that the entering into the agreement settling the Washington case was a condonation of all prior grievances. But it is contended by counsel that there can be no condonation where there is no cohabitation, and that there was no cohabitation between the parties after the agreement was signed. While it is true, as contended, that there was no cohabitation, we are not in accord with the contention made. "Condonation," as that word is used in divorce suits, is merely a forgiveness by the aggrieved spouse of past offenses on the condition that they will not be repeated. Such forgiveness must be with the intention that the offender

shall be restored to former marital relations. 19 C. J. 83. This forgiveness is generally established by the conduct of the party, but an express forgiveness may be shown, and, when shown, is as binding as one shown by proof of cohabitation.

In Beeby v. Beeby, 1 Hagg. Ecc. 789, the court, speaking through Lord Stowell, said:

"Now condonation is forgiveness legally releasing the injury; it may be express or implied, as by the husband cohabitating with a delinquent wife, for it is to be presumed he would not take her to his bed again unless he had forgiven her."

Another English case wherein express condonation was held sufficient is that of Blandford v. Blandford, 8 Prob. Div. 19. In that case the wife had written letters expressing her forgiveness. The court said:

"But the letters show that she forgave him on condition that he 'sinned no more,' and that is the legal definition of condonation."

Such is the rule in the United States. While there seem to be but few cases on the point, they all hold that the condonation may be express merely.

The Supreme Court of Arkansas in Bush v. Bush, 135 Ark. 512, 205 S. W. 895, 6 A. L. R. 1153, goes into the question at some length, and shows upon both reason and authority that the rule stated is correct. Other authorities sustaining the rule are: 2 Schouler on Marriage, Div., Sep. and Dom. Rel. sec. 1696; 1 Nelson on Divorce and Separation, sec. 465; Merriam v. Merriam, 207 Ill. App. 474; Sewall v. Sewall, 122 Mass. 156, 23 Am. Rep. 299.

4. But it is said by counsel that a divorce suit is in the nature of a quasi criminal proceeding, and hence rules of evidence pertaining to criminal cases control, and therefore the trial court should have permitted the testimony in question to go to the jury for the purpose of establishing the acts which are relied upon to constitute the desertion pleaded by the defendant.

In support of the contention that a divorce suit is a quasi criminal proceeding, we are referred to the case of

Stafford v. Stafford, 41 Tex. 111. There are two or three other cases so holding, but we do not think the reasoning put forth to sustain the statement is sound. The chief reason to support the conclusion, as stated in the Stafford Case, is:

"In all divorce suits the defendant is charged with a breach of a solemn contract; in many cases with disgraceful and brutal conduct; in others with offenses that are known to the law either as a misdemeanor or felony. Again, no judgment of divorce can be rendered by agreement or consent; none by confession or admission of either party; neither can a judgment be rendered by default, and, as in criminal cases, the defendant cannot be compelled to criminate himself by answering or testifying under oath. These facts show that it is in its nature a quasi criminal proceeding, although not presented in the name of the state, nor punished by fine or imprisonment."

How can the fact that a husband's brutal conduct is the ground for a divorce affect the character of the proceeding? The brutal conduct might not even be criminal, but, if it were, the husband could be criminally prosecuted, and at the same time the wife might prosecute her suit for a divorce in the civil court. The fact that no divorce can be granted by consent, default, or confession cannot affect the nature of the suit. The reason why there can be no such judgment in a divorce suit is because the state is interested in preserving marital relations. It is equally interested whether the proceeding be equitable or quasi criminal in character.

While, as held in Effinger v. Effinger, 48 Nev. 209, 239 P. 801, a divorce suit is statutory in Nevada, it partakes of the nature of an equitable proceeding. The writs of injunction and mandamus and probably others are issued in such proceedings, and, no doubt, a receiver might be appointed on a proper showing, and, as said in Black v. Black, 5 Mont. 15, 2 P. 317, the court, sitting as a chancellor, is alone responsible for the decree as to alimony and the custody of the children.

Divorce suits were classified as equitable in character

in the early judicial history of California in the case of Lyons v. Lyons, 18 Cal. 447, and later in Sharon v. Sharon, 67 Cal. 185, 7 P. 456, 635, 8 P. 709.

In 19 C. J. 22, it is said:

"Matrimonial actions are neither actions at law nor suits in equity, but are statutory actions in which both jurisdiction and practice depend on the statute, except that where the statute is silent the practice usually follows the rule in equity."

See, also, Cast v. Cast, 1 Utah, 112; Fulton v. Fulton, 36 Miss. 517; Kretz v. Kretz, 73 N. J. Eq. 246, 67 A. 378; Cohagan v. Cohagan, 294 Ill. 439, 128 N. E. 494; Richmond v. Richmond, 10 Yerg. (Tenn.), 343.

But, whatever may be the correct view in other states, our constitutional convention classified divorce suits as equitable in character. When section 6 of article 6 of the constitution which fixes the jurisdiction of the district courts of this state was under consideration, Mr. Johnson made a motion to amend so as to give that court jurisdiction over the person and estates of minors. Mr. Banks then said, "I will suggest further whether it would not be well to include cases of divorce." Mr. De Long thereupon stated, "They are covered already. Those are actions in equity, and it is provided that the district courts shall have original jurisdiction in all cases in equity." The convention accepted the suggestion of Mr. De Long as correct, and no provision was incorporated in the section or in any other section conferring jurisdiction in divorce suits. Marsh's Constitutional Debates, 653.

But, should we concede that a divorce suit is quasi criminal in nature, we think the contention should be rejected, for the reason that the rule invoked is not applicable to the situation presented. To support the contention that proof of other offenses is admissible, our attention is directed to the case of State v. Vertrees, 33 Nev. 509, 112 P. 42. In that case the court said:

"Error is assigned in the admission of certain testimony tending to establish other similar offenses committed about the same time as the offense charged in

the indictment. In this character of cases where intent is the gist of the action, evidence of similar offenses is admissible for the purpose of establishing criminal intent, and the ruling of the court in this respect was not error."

That case turned upon the well-recognized proposition that, where intent is the gist of the offense, evidence of other similar offenses committed about the same time is admissible. No such situation is presented in the instant case.

5, 6. It is also said that the complaint does not state a cause of action, for the reason that it does not allege that there was a restoration of marital relations after the agreement in the Washington case was executed; the theory being that there could be no desertion until there had been such restoration. We do not think any such allegation was necessary. The condonation wiped out any prior offense just as effectively as if it had never existed, and restored the parties to their original marital relationship. The burden was upon the defendant to show that the condonation had been rendered ineffective by showing a repetition of the offenses. Until this was done the situation stood just as though there had never been any misconduct on the part of the plaintiff prior to the alleged desertion on the part of the defendant.

7. It is next contended that the evidence fails to show that the plaintiff had established a bona fide residence in Washoe County, Nevada. This was a question of fact to be determined by the jury, and, there being substantial evidence to support the verdict, we are bound thereby.

8. It is contended that the court erred in sustaining an objection to the following question asked plaintiff on cross-examination, namely: "From what source is your income derived?" The record on this point reads:

"Q. Have you any source of income within the State of Nevada? A. No.

"Q. From what source is your income derived?

"Mr. Kennedy: If it please your honor, that is objected to.

"The Court: The objection seems to be good. I will hear from you, if you want to be heard, Mr. Ayres.

"Mr. Kennedy: It is not cross-examination; not relevant, material, or competent.

"Mr. Ayres: I will take your honor's ruling.

"The Court: Objection sustained."

In the circumstances we do not think the court abused its discretion. Counsel was given an opportunity to state his theory, and declining to do so, the court could not surmise the purpose of the question. The situation is not parallel to that presented in McLaughlin v. McLaughlin, 48 Nev. 155, 238 P. 402. It may be of interest to note that the Supreme Court of Oklahoma reached the same conclusion we did in the McLaughlin Case, Pope v. Pope, 116 Okl. 188, 243 P. 963.

9. It is next contended that the court erred in overruling an objection to a question asked Mr. Allen, a witness called in behalf of the plaintiff. The question reads,

"If Dr. Thompson had been away from Reno between the 14th or 15th day of June, 1921, and the 15th day of December, 1921, would you have known it?"

This was the sixth-month period during which it was claimed plaintiff resided in Washoe County as an essential to the establishing of his residence there. There was no prejudice in the ruling.

10. It is next asserted that the court erred in sustaining an objection to the following question:

"When you and your wife were married, where did you first take up your home?"

It appears that the parties were intermarried in October, 1901, more than 20 years before this suit was instituted. The place where they then took up their residence could throw no light upon the issues in the case, and the ruling was right. A number of other contentions equally lacking in merit are urged upon our

consideration in the brief. We decline to discuss them separately.

**11.** It is said that the court erred in refusing to give certain instructions requested by defendant on the law of residence. The court gave instructions on this point fully and correctly stating the law, and it was not incumbent upon the court to give the instructions requested by defendant covering the same legal question. No error was committed in that regard.

No prejudicial error appearing in the record, it is ordered that the judgment be affirmed.