[Civ. No. 4035. Third Appellate District.—March 20, 1930.]

HAZEL L. HAWKINS, Respondent, v. JOHN H. HAWKINS, Appellant.

J. C. Webster for Appellant.

R. R. Fowler and F. O. Hoover for Respondent.

THOMPSON (R. L.), J.—The plaintiff was awarded a decree of divorce from the defendant on the ground of extreme cruelty. She was also given the custody of their two minor children. The answer alleged condonation as a special defense, upon which issue the court failed to adopt a finding. This is assigned as a ground for reversal. The appellant also contends that the court's finding that he had denied the paternity of one of his children is not supported by the evidence, for the reason that it lacks corroboration.

It is not contended that other acts of cruelty are not amply supported by the evidence. It is not necessary that all the alleged acts of cruelty shall be corroborated or even proved. It is enough if the facts which are corroborated fulfill the definition of extreme cruelty as it appears in section 94 of the Civil Code and justify the entry of a decree of divorce on that ground. Other findings may be disregarded as surplusage. (*Avery* v. *Avery,* 148 Cal. 239 [82 Pac. 967]; *Hansen* v. *Hansen,* 86 Cal. App. 744 [261 Pac. 503]; 19 C. J. 134, sec. 349; 9 R. C. L. 436, sec. 240.)

Upon the question of condonation, the evidence is practically undisputed. On account of acts of alleged cruelty on the part of appellant the spouses were separated. Their home in Sonora was no longer maintained. The respondent was living in Oakland and was training to learn the art of hair dressing. Five days before the complaint in this action was filed the appellant visited his wife in Oakland and claims that a reconciliation was then reached and that she condoned the alleged charges of cruelty. All that the record shows in this regard is that he visited his wife at the home of her sister in Berkeley and discussed their family affairs. He said: "We talked about the children, the home and where we would live. She said: 'For the sake of the children I'll try it,' and she agreed to return." That

evening they went to a show together and that night they occupied a room together in an Oakland hotel, assuming the relationship of husband and wife. The appellant further says: "We talked about going back and living together and my wife and I expressly agreed with each other to condone and to resume marital relations."

The appellant then had no employment. He had no home to which he could take his wife and family. Except the one incident of cohabitation referred to there was no effort to restore marital rights. There was no subsequent cohabitation between the spouses. The following morning the respondent went to her mother's home at Turlock and never again saw her husband until the time of the trial. Within two or three days she telephoned him that she intended to make no further effort toward reconciliation. The complaint for divorce was immediately filed by her. The most that may be said regarding the issue of condonation in the present case is that the spouses discussed a reconciliation of their domestic troubles; that the respondent agreed to condone her husband's offenses and return to him "for the sake of the children," and that they went together to a show and slept together one night in a hotel. We are of the opinion this does not have the effect of consummating condonation.

A decree of divorce will be denied upon sufficient proof of condonation. (Sec. 111, Civ. Code.) Condonation is conditional forgiveness of a matrimonial offense which would otherwise furnish ground for a divorce. (Sec. 115, Civ. Code.) To consummate the defense of condonation it is necessary that the aggrieved spouse should (1) have knowledge of the facts constituting the cause of divorce, (2) that reconciliation be accomplished and remission of the offense be granted, and that (3) the offending party be restored to all marital rights. (Sec. 116, Civ. Code.)

It is doubtful whether the facts of this case adequately show reconciliation and remission on the part of the respondent. Her statement that she would "try" returning to the appellant "for the sake of the children" indicates a lack of forgiveness on her part. The fact that she immediately returned to her mother at Turlock and promptly filed a suit for divorce within a few days after their interview seems to refute the idea of reconciliation or remission. But assuming that the statement which was testified to by the

appellant that they agreed "to condone and to resume marital relations" sufficiently fulfills the requirement of the statute with respect to reconciliation and remission, still there is an absence of evidence of "restoration of the offending party to all marital rights," unless it may be said that a single act of cohabitation of the spouses which is accomplished in the rented room of a hotel, fulfills this requirement. We think it is insufficient under the circumstances of this case to constitute a consummation of condonation. The statute requires a restoration to all marital rights. It is not claimed there was a restoration to any marital rights in the present case, except the right of cohabitation on a single occasion. There is a clear distinction between the ordinary construction of the term "marital relations" and the statutory term of "all marital rights." The conjugal rights of married persons include the enjoyment of association, sympathy, confidence, domestic happiness, the comforts of dwelling together in the same habitation, eating meals at the same table, and profiting by the joint property rights as well as the intimacies of domestic relations.

It has been repeatedly held that condonation of acts of extreme cruelty is not accomplished by sexual intercourse alone. (*Bohnert* v. *Bohnert,* 95 Cal. 444 [30 Pac. 590]; *Weber* v. *Weber,* 195 Mo. App. 126 [189 S. W. 577]; 19 C. J. 87, sec. 201; *Beebe* v. *Beebe,* 174 App. Div. 408 [160 N. Y. Supp. 967]; *Martin* v. *Martin,* 151 La. 530 [92 South. 46]; *Reynolds* v. *Reynolds,* 34 How. Pr. (N. Y.) 346; *Gardner* v. *Gardner,* 2 Gray (Mass.), 434; *Phillips* v. *Phillips,* 1 Ill. App. 245; *Kennedy* v. *Kennedy,* 87 Ill. 250.) Most of the foregoing cases hold that a single act of cohabitation is insufficient to support a claim of condonation of acts of cruelty unless it is accompanied by other acts indicating an intention to forgive the offenses and to restore the offender to all marital rights. A distinction is drawn as to the effect of a single act of intercourse upon the defense of condonation of a cause of action founded on adultery and one which is based upon extreme cruelty. The cases also make proper allowance for the submission of the wife to the importunities or dominance of the husband on the theory that he is more forceful. In the case of *Bohnert* v. *Bohnert,* 95 Cal. 444 [30 Pac. 590], it is said: "Under our statute, one of the requirements necessary to condonation is

'restoration of the offending party to all marital rights (Civ. Code, sec. 116), and this requirement is not proved by evidence of sexual intercourse alone.' '' This is particularly true when but a single act of intercourse is accomplished under such circumstances as are presented in the present case.

Where there is no adequate evidence to support an issue in the trial of a case it becomes unnecessary to adopt findings with relation thereto. A failure to adopt findings upon the issue of condonation in the present case is not reversible error since the record would have required a finding adverse to the appellant. (24 Cal. Jur. 945, sec. 189; *White* v. *White,* 82 Cal. 427, 452 [7 L. R. A. 799, 23 Pac. 276]; *Smith* v. *Smith,* 119 Cal. 183 [48 Pac. 730, 51 Pac. 183]; *Maloof* v. *Maloof,* 175 Cal. 571 [166 Pac. 330]; *Wolverton* v. *Wolverton,* 163 Ind. 26 [71 N. E. 123].)

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.