## JOSEPH G. RAMSAY, Appellant *v.* ELIZABETH TAYLOR RAMSAY, Respondent.

Nos. 3680 and 3681

May 16, 1952.                                    244 P.2d 381.

*Anthony M. Turano,* of Reno, for Appellant.

*L. D. Summerfield* and *A. R. Schindler,* of Reno, for Respondent.

## OPINION

By the Court, MERRILL, J.:

Upon this appeal (from judgment of the trial court and from its order denying motion for new trial) we are concerned with the question whether in an action for divorce a single act of sexual intercourse occurring after separation of the parties can alone serve as condonation of a course of conduct amounting to extreme cruelty.

The complaint of the plaintiff husband as supported by a bill of particulars, showed separation of the parties in October, 1948, and asserted as cruelty a course of conduct on the part of the defendant wife extending for a period of years prior thereto. In her answer to the complaint the wife by her second and third separate and affirmative defenses, asserted that plaintiff had condoned the alleged acts of cruelty. The second separate defense alleges condonation generally. The third separate defense purports to state the facts of the alleged condonation as follows:

"That from on or about June 21, 1943 until on or about October 18, 1948 the plaintiff and the defendant and the minor child lived together in a home at Haverford, Pennsylvania; that on or about October 18, 1948 the plaintiff departed from said home in Haverford, Pennsylvania, and from that date until July 7, 1949 continued to live separate and apart from defendant; that

the defendant on learning that the plaintiff was residing in Washoe County, Nevada, came to Reno, Nevada, prior to July 7, 1949, bringing the minor child with her, for the purpose of effecting a reconciliation with the plaintiff; that following the arrival of the defendant in Reno, Nevada, the plaintiff consented to a meeting with her, and they, together with the minor child, did meet in Reno, Nevada, on July 7, 1949; that following said meeting and on said July 7, 1949, the plaintiff drove the defendant and said minor child to Glenbrook Inn, Lake Tahoe, Douglas County, Nevada, where the plaintiff and defendant were registered as husband and wife and had one bedroom assigned to them and another to said minor child; that after dinner together at said Glenbrook Inn, and on said July 7, 1949, the plaintiff and defendant retired to said bed room assigned to them, and occupied the same through the night of July 7, 1949, and during the said night plaintiff and defendant cohabited and had sexual intercourse; that the plaintiff and the defendant and the said minor child spent the following day, July 8, 1949, together, and had dinner together the evening of said day; that early the following morning, July 9, 1949, the defendant was served with the summons and complaint on file in the above entitled action, said complaint having been verified by plaintiff on July 8, 1949; that according to Plaintiff's Bill of Particulars in support of his alleged cause of action of extreme cruelty, all of said alleged extreme cruelty occurred prior to July 7, 1949."

Demurrers to the separate defenses were overruled. After trial the court by its findings of fact specifically found the quoted allegations to be true and by its conclusions found them to suffice as condonation and divorce was denied. It is conceded by the wife that if condonation be found, it must arise solely from the single act of intercourse; that there was no general forgiveness on the part of the husband other than might there be found by implication. The husband contends that a

single act of intercourse may not, in the absence of some showing of forgiveness and general restoration of marital rights, be held to constitute condonation of a course of conduct amounting to extreme cruelty.

The defense of condonation in this state is not governed by statute but remains a part of the common law. Generally it can be defined as "forgiveness, express or implied." 17 Am.Jur. 248 (Divorce and Separation secs. 195, 196). In the usual case, in the absence of express forgiveness, the question is whether forgiveness may by implication be found from the actions of the offended spouse, and such is the case before us. (For a case of express forgiveness see Thompson v. Thompson, 49 Nev. 375, 247 P. 545, 47 A.L.R. 569.) In England condonation has been defined as "a blotting out of the offense imputed, so as to restore the offending party to the same position he or she occupied before the offense was committed." Keats v. Keats, 1 Swab. & T. 334. As to the character of forgiveness required and of the actions by which such forgiveness is to be implied, the Lord Chancellor in that case stated: "I think that the forgiveness which is to take away the husband's right to a divorce must not fall short of reconciliation, and that this must be shown by the reinstatement of the wife in her former position * * *." In this country, to the same effect is Christensen v. Christensen, 125 Me. 397, 134 A. 373, where it is stated: "To be effectual, condonation must include a restoration of the offending party to, or a continuance of all marital rights, after the offense becomes known. While condonation imports forgiveness, the converse is not necessarily true. The offended party may forgive, in that he may not bear any ill will, yet withhold a complete reconciliation in the sense of reinstating the offended to conjugal cohabitation and full marital rights. The preliminary steps toward reconciliation and ultimate condonation, such as receiving the offending spouse back into the home,

as in the case at bar, does not alone constitute condonation so long as full marital rights are intentionally withheld."

A distinction has uniformly been recognized between the requirements for condonation of adultery and of extreme cruelty due to the difference in character of the marital offenses themselves. In adultery the ground consists of a single act and the offense specifically is a violation of marital chastity. The general rule in such cases appears to be that a single act of intercourse will suffice as condonation since it serves to demonstrate in the clearest possible manner that the offended spouse is in fact reconciled to the specific offense and has chosen to forgive it. The action bespeaks forgiveness more clearly than words could do.

In cases of cruelty the ground ordinarily is based not upon a single act of violence but upon a continuing course of conduct. As pointed out in Graham v. Graham, 5 Scotch Cas. 4th ser. 1093, the "true issue of the case" is "whether the [plaintiff] can with safety to person and health live with [the defendant] now." (Also: Doe v. Doe, 5 N.Y.S. 514.) If acts of condonation are to bespeak forgiveness, reconciliation and restitution they must be considered in the light of that "true issue" and should reasonably demonstrate a determination by the parties upon that issue. It does not, then, follow as in the case of adultery that from a single act of intercourse in and of itself (as distinguished from a general continuation or resumption of marital intercourse), one may imply reconciliation, reinstatement and forgiveness. Phillips v. Phillips, 1 Ill.App. 245. It is generally recognized that each case must be considered upon its own facts. Hanniball v. Hanniball, 18 N.J. Misc. 67, 10 A.2d 492; See 27 C.J.S. 615 (Divorce sec. 61 d). When so considered, an isolated act of intercourse has been held insufficient to establish condonation even where

(as here) it occurs following the separation of the parties and with no subsequent revival of the offense. Weber v. Weber, 195 Mo. App. 126, 189 S.W. 577; See: Miles v. Miles, 1948, 131 W.Va. 513, 48 S.E.2d 669; Massie v. Massie, 202 Ia. 1311, 210 N.W. 431; (But see: Davidson v. Davidson, 1940, 111 Vt. 68, 10 A.2d 197, for view contra).

It should not, then, be said that condonation may by implication of law, be found from actions which do not establish reconciliation, reinstatement or forgiveness but which, rather, indicate simply that such matters were in the preliminary stage of consideration by the parties.   Kennedy v. Kennedy, 87 Ill. 250; Massie v. Massie, supra; Weber v. Weber, supra.   Such a policy would appear to discourage that which is most to be desired in such cases:   an effort in good faith to bring about a reconciliation.   As was said in the dissenting opinion in Miles v. Miles, supra:   "If condonation is to become the likely result of unsuccessful efforts to become reconciled, it is certain that the person whose rights have been injured will be extremely apprehensive of the slightest gesture that might result in surrendering a legal right to relief.   It will result in fewer, not more, reconciliations."

In the case at bar the allegations of the separate defenses and, accordingly, the findings of fact thereon, limited as they are to a showing of a single act of intercourse in the course of an overnight excursion, fall far short of establishing reconciliation, reinstatement or forgiveness.   The most that may be said is that these matters were desired and sought by the wife and were considered and rejected by the husband.

Respondent contends, however, that the conduct of the respondent was such that this court, actuated by considerations of public policy, should not permit him to

deny forgiveness. In this respect respondent points to the following finding made by the trial court: "One of the purposes of plaintiff's taking defendant to Glenbrook Inn, Lake Tahoe, Nevada, on July 7, 1949, and occupying her time that day and the day of July 8, 1949, was so that she would be within the State of Nevada to be served the first thing on the morning of July 9, 1949." The court concluded that the husband "is estopped by his conduct to claim that he has not condoned the extreme cruelty charged against defendant by him."

A reading of the record upon this point convinces us that while the husband had the matter of service of process in mind as one reason for accompanying his wife following their meeting, it was but a minor and incidental purpose; that his primary purpose, due to his wife's complaints, was to find a restaurant outside the city of Reno (then subject to a general strike of culinary workers) where his wife and child could secure a meal; that an overnight excursion was unplanned so far as either party was concerned and developed only through lack of success in finding a restaurant as the trip progressed. Certainly the trip was not at all necessary to the "purpose" in question. The wife herself testified in effect that she had planned to remain in Reno beyond July 9th. As a matter of common knowledge we know that in order to accomplish the service of process the husband need have kept the wife occupied for less than an hour.

We cannot, under the circumstances (and in the absence of citation of pertinent authority), regard the husband's incidental motive so reprehensible as to constitute in effect an estoppel by public policy when essential elements of estoppel are so clearly lacking.

We therefore hold that the trial court was in error in concluding that condonation had been established by proof of the facts as alleged and in rendering judgment denying divorce on that basis.

By its findings the trial court refrained from making

any determination as to the alleged extreme cruelty of the wife (the testimony as to which was in direct conflict), deciding only that if such cruelty existed it had been condoned.

Accordingly the judgment and order of the trial court are reversed and the matter remanded for new trial without prejudice to the taking of further proceedings relating to pleadings. Respondent wife is awarded her costs on this appeal.

BADT, C. J. and EATHER, J., concur.