[Civ. No. 3107. Fourth Dist. Apr. 11, 1944.]

CHARLES C. CROUCH, Plaintiff and Appellant, v. ANN CROUCH, Defendant and Appellant.

Monroe & McInnis, Phil D. Swing and George W. Crouch for Plaintiff and Appellant.

Ann Crouch, in pro. per., Dempster McKee, Olive E. Boswell and Virginia Confar Busch for Defendant and Appellant.

GRIFFIN, J.—Plaintiff Charles C. Crouch was married to defendant Ann Crouch in Yuma, Arizona, on August 26, 1939. They separated on April 18, 1941. On May 3, 1941, plaintiff commenced this action for divorce on the ground of extreme cruelty. Defendant filed an answer and cross-complaint seeking a divorce on the same ground. After a lengthy trial, the court awarded the plaintiff a divorce and, in lieu of any right or interest in the community property, awarded defendant the sum of $2,500, in addition to the sum of $100 owing from plaintiff to defendant. Defendant appealed from the entire judgment. Plaintiff appealed from the portion of the judgment awarding the defendant $2,600.

It is first contended by defendant that the evidence is insufficient to establish that she had been guilty of extreme

cruelty justifying a decree of divorce. Plaintiff contends otherwise.

Plaintiff's complaint alleges several distinct acts of claimed extreme cruelty inflicted upon him by defendant. ■ In the main it is found by the trial court that since said marriage the defendant has treated the plaintiff with extreme cruelty which caused the plaintiff grievous mental and physical suffering and which conduct on defendant's part "destroyed the legitimate objects of matrimony and made a continuation of the marriage relation between" them impossible. That said acts of cruelty are more particularly described as follows, to wit: (a) Sometime prior to the marriage of plaintiff and defendant the defendant was living in the city of Santa Barbara in the home of one William Goetsch, a man of advanced years. Prior to the marriage of the plaintiff and the defendant Goetsch deeded to defendant several improved parcels of real estate in said city and transferred to her certain money and funds. The court found, in reference to the matter, that prior to their marriage, defendant stated to plaintiff that she considered the said William Goetsch an utterly incompetent person; that prior to their marriage plaintiff explained to defendant that his good name and reputation, as well as hers, would be adversely affected by the notoriety incident to any effort on the part of the said William Goetsch or his relatives or friends if they tried to recover the said property and money; that plaintiff exacted a promise from the defendant that immediately after their marriage she would reconvey the said property to the said Goetsch and return to him the said money; that on frequent occasions after their said marriage, plaintiff urged the defendant to keep her promise; that he could not afford to have his wife's name brought into any litigation concerning the matter, and in which it would probably be alleged that at the time the said properties and monies were conveyed to her the said William Goetsch was under her undue influence; that each time plaintiff so urged the defendant, she would either change the subject or make a promise to take care of the matter sometime in the future, but that she failed to make such reconveyances; that on September 13, 1939, plaintiff learned that friends and relatives of Goetsch were threatening to make trouble concerning the matter, and on that date he wrote a letter to him offering to reconvey the prop-

erty and requested the defendant to sign and mail it; that she refused to do so and plaintiff informed her that if she did not sign and mail it he would leave her and never live with her as her husband thereafter; that thereupon the defendant flew into a violent rage, cursed and swore, and accused the plaintiff of improper motives; that she stated that if she didn't keep the money and property someone else would take it away from him; that thereafter Goetsch came to San Diego and told various friends and employees of the plaintiff that defendant had taken all of his property away from him and left him a pauper, to the great humiliation and shame of the plaintiff; that at that time defendant again promised that she would reconvey the property to him; that thereafter defendant received numerous communications from the brother of said Goetsch requesting a return of the property, which defendant concealed from plaintiff and that the next thing he knew of the matter was when he was called on the telephone by a deputy sheriff informing him that a complaint and summons had been issued from Santa Barbara against her concerning that property; that plaintiff then forced her to go to Santa Barbara and stop the litigation; that she secured a dismissal of the suit by reconveying the properties with the exception of $1,000 of money which she had in the bank in the name of her daughter.

It was further found that in January, 1940, plaintiff returned to his home and heard defendant screeching at the top of her voice, cursing and using foul names at and in the presence of her two children; that on February 10, 1940, in a violent rage, defendant cursed plaintiff. It was generally found that on other occasions defendant flew into a violent rage, cursed plaintiff, and on one occasion in a voice that could be heard for a block which attracted the attention of passers-by on the streets; that at a time when plaintiff did not have any great amount of funds "the conduct of the defendant in running bills and overdrawing her bank account caused the plaintiff worry and interfered with his health and his work." The court's findings above mentioned are supported by the evidence and received some corroboration.

Defendant maintained throughout the trial that there was nothing improper in the manner in which she acquired the property from Mr. Goetsch; that she agreed to care for him

for the rest of his life with its revenue and proceeds and was so doing when plaintiff agreed to marry her; that he was the one who caused her to deed the property back and he would not allow her to share her attentions and fulfill her obligation to care for Mr. Goetsch from the revenues of his property; that as a result of the marriage to plaintiff she lost all of her said property. As to the charge of cursing and screaming, she admitted these facts generally, but contended that plaintiff so aggravated her in his conduct that she became hysterical and intimated that she was fully justified in calling him the names she did call him.

The trial court has decided these conflicts in the testimony in favor of plaintiff. ▪ The questions of the credibility of the witness and the weight to be given his testimony were primarily questions addressed to the trier of fact and the trial court's determination on such conflicting evidence is conclusive on this appeal. ▪ If true, the acts proved were sufficient to constitute extreme cruelty within the meaning of the statute (Civ. Code, §§ 92-94; *Hawkins* v. *Hawkins*, 104 Cal.App. 608, 610 [286 P. 747]; *Barnes* v. *Barnes*, 95 Cal. 171 [30 P. 298, 16 L.R.A. 660].)

▪ It is next contended that the trial court erred in certain rulings rejecting certain testimony. This evidence bore upon the question as to how well plaintiff knew defendant prior to their marriage. The evidence sought to be elicited was immaterial to the issues. We have examined the entire record and find that both parties were allowed more latitude in the general reception of evidence than would have been necessary. ▪ No evidence was excluded or received over objection that had any particular bearing on the questions presented. It is clear that the evidence excluded or received over objection would not have changed the trial court's ultimate determination. No prejudicial error resulted. (Art. VI, § 4½, Const.)

▪ The last question presented is the main cause of the appeal. Plaintiff has been a practicing attorney in San Diego for many years. At the time of trial he was 65 years of age and had been previously married to Ivy M. Crouch, who died on June 17, 1938. Four children, now grown, were the issue of the previous marriage. Defendant, aged 50 years, had a son 24 years of age by her first marriage and a daughter 16 years of age by either her second or third marriage. During the days when public improvements were flourishing in San

Diego County, plaintiff enjoyed a lucrative practice of the law, but lost such earnings as he then made, during the depression. During the period of his marriage to his first wife he, on September 19, 1936, entered into an agreement with one Austin, whereby he was to represent said Austin in an action against the Hallmark Oil Company to recover certain claimed oil interests. That agreement provided, among other things, that he was to receive a 40 per cent interest in whatever plaintiff might obtain in the event of a recovery. An action was instituted and judgment was obtained for plaintiff in the trial court dated August 14, 1940, as of July 1, 1940. An appeal was subsequently perfected. (See *Austin* v. *Hallmark Oil Co.*, (Cal.App.) 125 P.2d 935 [May 15, 1942.]) Plaintiff and defendant were married on August 26, 1939. The judgment was modified and affirmed in the Supreme Court on March 11, 1943. (*Austin* v. *Hallmark Oil Co.*, 21 Cal.2d 718 [134 P.2d 777].) As a result of that litigation, plaintiff's contingent fee, approximately $100,000, less expenses, became due and payable, but had not been paid at the time the judgment in this action was entered.

In another action, *Sefton* v. *Sefton,* plaintiff entered into a written agreement dated October 22, 1936, with Mrs. Sefton, which provided, among other things, that she would pay plaintiff herein one-half of any amount recovered. After the trial of that action a judgment was entered on September 7, 1937. On March 17, 1938, an action was brought, (*Sefton* v. *San Diego Trust & Savings Bank,* (Cal.App.) 106 P.2d 974). About November 29, 1938, a judgment resulted in favor of plaintiff, and on appeal was by this court on December 4, 1940, modified and affirmed. A hearing was granted by the Supreme Court. The case was later dismissed. Plaintiff testified that as a result thereof he then collected his contingent fee of approximately $9,600, less expenses.

During the probating of the estate of Ivy M. Crouch, deceased, plaintiff entered into a written agreement with his four children, agreeing that "the parties hereto are desirous of dividing all of the property owned by the said Charles C. Crouch and/or the said Ivy M. Crouch, at the time of her decease, whether separate or community, on the following basis, to wit:" one-half thereof to plaintiff and one-half to the children, share and share alike. It further provided that "whereas, the parties hereto are desirous of settling their

respective rights and interests in certain legal cases the party of the first part has on a contingent fee basis . . . the parties hereto agree . . .''; that plaintiff ''has a contingent fee in the cases of *Sefton* v. *Sefton,* and *Austin* v. *Hallmark Oil Company, et al.'';* that ''in the event recovery is had on either or both of said cases then the total fees received by the party of the first part (less the deductions hereinafter mentioned) shall be divided by the parties thereto in the following manner . . . upon the theory that the 'children' are entitled to one-half the amount earned prior to June 17, 1938, the date of the death of said deceased, and plaintiff shall be entitled to the remaining one-half, plus the entire amount earned subsequent to the said 17th day of June, 1938,'' and should be divided on a ''time devoted to'' basis.

Defendant argues mainly that the trial court failed to consider her community interest in those contingent fees in awarding her the sum of $2,500; that ''had the court been dealing with community property of $100,000, in making a division of the same, he would have given to the defendant the same proportion of the community as he did in his findings and judgment in this case.''

Plaintiff and defendant purchased a home and furniture during their marriage state. Plaintiff paid $250 thereon. Defendant paid $100 from her separate funds. The trial court awarded this property to plaintiff as well as other incidental properties, and ordered him to repay the defendant the $100 advanced by her. At the time the trial court made the findings and signed its judgment in the present case the Hallmark Oil Company case had not been finally determined and plaintiff's rights to collect any amount under the agreement had not been decided. Accordingly, any community rights defendant may have had therein were likewise undeterminable. In the Sefton case, as well as the Hallmark Oil Company case, most of the trial work had been completed before plaintiff was married to defendant. (See, also, *Austin* v. *Turrentine,* 30 Cal.App.2d 750 [87 P.2d 72].) However, in the Sefton case the money was collected during the existence of the present marriage. Considerable of the balance of the proceeds from that fee was expended in support of the community. This was also true of other smaller accounts collected during their marriage.

As we construe defendant's contention, she desires this court to now hold that some proportionate share of the Hall-

mark Oil Company fee and the Sefton case fee were part of defendant and plaintiff's community property; that we should so segregate it and hold that the trial court abused its discretion in not giving to the defendant a larger amount in her judgment. In this respect the court specifically found as follows:

"Upon the issue of the existence of community property, the Court finds that it is true that plaintiff and defendant acquired during their marriage community property consisting of real and personal property and including certain legal fees earned by plaintiff and to be thereafter earned prior to the final decree of divorce herein, which said community property aggregated more than Five Thousand Dollars ($5,000.00). That it is not true that defendant has any interest, community or otherwise, in the oil well located near Bakersfield, California, nor in the Studebaker automobile referred to in defendant's cross complaint nor in either of the contingent attorney's fees earned or to be earned by plaintiff as the result of contingent fee contracts entered into by plaintiff prior to said marriage; and fees collected on said contingent fee contracts or which may hereafter be collected are the separate property of plaintiff. The court further finds that the exact amount and extent of the community property of the parties and the value thereof has not been accurately established herein; but the Court further finds that such exact valuation is immaterial, for the reason that in view of all the facts and circumstances, the Court finds that the amount of Twenty Five Hundred Dollars ($2500.00), and no more, is a fair and reasonable amount to be paid to the defendant by the plaintiff in lieu of all her community interest and her right, title and interest in and to all community property owned by the parties or to be acquired by them in the future. The Court further finds that the defendant is entitled to no greater sum in lieu of her share in any community property. The court further finds that upon payment of said sum of Twenty Five Hundred Dollars ($2500.00) by the plaintiff to the defendant, all of the community property, both real and personal, owned by the parties hereto and in which the defendant has any community interest, heretofore acquired or hereafter to be acquired and in which there exists or may exist any community interest, shall be and is hereby adjudged to be the sole and separate property of the plain-

tiff. The court further finds that in view of the stipulation of the parties made in open court, said sum of Twenty Five Hundred Dollars ($2500.00) shall be due and payable ninety (90) days from and after the entry of interlocutory decree in this action, unless there be an appeal taken herein. The court further finds that there is due and owing to the defendant from the plaintiff the sum of One Hundred Dollars ($100.00) by reason of monies advanced by defendant to plaintiff, which said sum shall be due and payable immediately upon the entry. of the interlocutory decree herein."

This finding clearly shows that the exact community interest of plaintiff and defendant in their property at the time the judgment was entered "has not been accurately established" and that therefore, in lieu of defendant's share therein, the court awarded her $2,500, regardless of the amount or value of the community property. ▮ In an action for divorce upon the grounds of extreme cruelty, the trial court has the legal right to award such portion of the community property to the offending spouse as it deems reasonable under the circumstances. It may even deny such party any award whatever if, from all the facts and circumstances of the case and conditions of the parties, it may deem such action just. ▮ In an action for divorce on the ground of extreme cruelty, subdivision 1 of section 146 of the Civil Code confers upon the trial court a wide latitude for the exercise of its judgment and discretion in assigning the community property to the respective parties and in every case it will be presumed that such discretion has been wisely and properly exercised, and though impliedly requiring that more than one-half of the community property shall be awarded to the innocent party, it does not otherwise limit the discretion of the trial court in making the award. The proportion should depend upon the particular circumstances of each case, and where the trial court has exercised a legal discretion this court, though clothed with the power of revision under the statute, will be slow to interfere with that discretion. (Civ. Code, § 146; *Knapp* v. *Knapp,* 23 Cal.App. 10 [136 P. 719]; *Thomsen* v. *Thomsen,* 31 Cal.App. 185 [159 P. 1054]; *Eslinger* v. *Eslinger,* 47 Cal. 62; *Gorman* v. *Gorman,* 134 Cal. 378 [66 P. 313]; *Quagelli* v. *Quagelli,* 99 Cal.App. 172 [277 P. 1089]; *Nave* v. *Nave,* 35 Cal.App. 27 [169 P. 253]; *Falk* v. *Falk,* 48 Cal.App.2d 762 [120 P.2d 714].)

■ Under the facts of the present case as found, the judgment of the trial court cannot be disturbed.

Judgment affirmed. Each party to pay his and her costs on appeal.

Barnard, P. J., and Marks, J., concurred.

Defendant and appellant's petition for a hearing by the Supreme Court was denied June 8, 1944.