[Civ. No. 14952. First Dist., Div. One. Apr. 28, 1952.]

DAISY E. CASH, Appellant, v. NORMAN V. CASH, Respondent.

L. L. James and Carl E. Day for Appellant.

Mancuso, Herron & Winn for Respondent.

PETERS, P. J.—Daisy E. Cash, plaintiff and appellant, brought this action for a divorce against Norman V. Cash, defendant and respondent. The trial court granted an interlocutory decree of divorce to Daisy on the ground of cruelty, divided between the parties what it found to be the community property, determined certain property to be the separate property of the respective parties, and provided for payments to the wife for a limited period. Daisy appeals, contending that the evidence does not support the finding that a certain bank account was the separate property of Norman, and that the division of community property was unfair.

These parties were married in Colorado in 1926, came to San Francisco in 1941, and separated in 1950. There are no children of the marriage. The evidence as to cruelty on the part of the husband is weak, but is sufficient to support the finding. The husband has not appealed. The main controversy between the parties at the trial, and on this appeal, is over the division of the property.

The trial court found the following to be community property, and awarded it as follows:

1. The residence of the parties valued at $11,000 was awarded to the wife subject to a $5,000 lien payable in two years in favor of the husband. The husband was required to pay the taxes and insurance during this two-year period, and the wife was required to assume the other expenses of upkeep and maintenance.

2. The furniture in the house belonging to the parties, and valued at $1,200 was awarded to the wife. Certain tools and personal effects of the husband were found to be his separate property, and certain other designated property to be the separate property of the wife.

3. A commercial bank account totalling $900 was divided equally between the parties.

4. An automobile valued at $400 was awarded to the husband.

5. A $2,000 insurance policy on the life of the husband was awarded to him, and a $1,000 insurance policy on the life of the wife was awarded to her.

The court also awarded to the wife counsel fees, and $125 per month for six months, and $100 a month for the next

twelve months ''for her rehabilitation in consideration of the disposition of all the community property.''

The court specifically found that a designated joint savings account in the amount of approximately $4,600 was the separate property of the husband.

So far as the property found to be community is concerned, there is no dispute over the nature of that property. Appellant, however, does claim that the trial court did. not make a just division of that property. There is no merit to this contention. So far as the property for which specific values were fixed is concerned, the wife was awarded property valued at $7,650, while the husband was awarded $5,850—a division roughly of 5/9 to the wife, and 4/9 to the husband. The cash values of the life policies do not appear. In addition, the wife was awarded $1,950 in periodic payments ''in consideration of the disposition of all the community property.'' ▮ Thus, substantially over 50 per cent of the community property was awarded to the wife. While the divorce was granted because of the cruelty of the husband, the evidence relating thereto was weak. At the conclusion of the trial, the court stated that the evidence produced on the issue was ''not very strong, not very forceful'' and that ''there is no evidence of any grievous misconduct on the part of the defendant.''

Under such circumstances, the division of the property made by the trial court will not be disturbed. While it is true that, under section 146 of the Civil Code, where the divorce is granted on the grounds of cruelty, the trial court must award more than 50 per cent of the community property to the innocent party, and that under section 148 of that code the division of property is subject to revision by the appellate court without the necessity of finding an abuse of discretion, it is equally true that the appellate courts seldom exercise this power. ▮ In *Gonsalves* v. *Gonsalves,* 92 Cal.App.2d 334, this court summarized the rule as follows (p. 341 [206 P.2d 1127]):

''There was no abuse of discretion by the lower court in awarding plaintiff 60 per cent and defendant 40 per cent of the community property. Moreover, we do not feel that the circumstances of the case justify us in exercising the power given under section 148 of the Civil Code to revise in any particular the award made by the trial court.

''While section 146 of the Civil Code requires that in cases of divorce on the ground of extreme cruelty, the court must award the innocent party more than one-half of the community

property [citing two cases], and section 148 grants to an appellate court the power to revise the award for 'any apparent degree of error, though not amounting to an abuse of discretion' [citing a case], it is clearly settled that the question of the amount of the award to be made in excess of the 50 per cent rests largely in the discretion of the trial court.'' (See, also, *Falk* v. *Falk*, 48 Cal.App.2d 762 [120 P.2d 714]; *Crouch* v. *Crouch*, 63 Cal.App.2d 747 [147 P.2d 678]; *Price* v. *Price*, 71 Cal.App.2d 734 [163 P.2d 501]; *Tompkins* v. *Tompkins*, 83 Cal.App.2d 71 [187 P.2d 840].)

There is a much more serious question presented as to the sufficiency of the evidence to sustain the finding that the joint bank account was in fact the separate property of the husband. The account in question is in the West Portal branch of the American Trust Company. This account was opened on April 29, 1942. The bank book reads ''Norman V. Cash and/or Mrs. Daisy Cash As Joint Tenants—Payable To Either Or To The Survivor.'' The balance in the account as on February 4, 1950, was $4,563.41.

There is no doubt that a substantial number of the deposits in this account came from what was originally the separate property of the husband. Appellant recognizes that at least $1,000 of the total sum came from money inherited by respondent from his relatives. She claims, however, that the balance came from his earnings. Respondent claims that a much larger portion was inherited by him, but he admits that certain substantial deposits came from his earnings in this state after marriage. Some of the deposits are unexplained. In 1947 the parties withdrew some $3,400 from this account to make the last payment on their home, which was admittedly community property. Appellant testified that when she came from Colorado to San Francisco in 1941, and before the account was opened, she had a conversation with her husband to the effect ''that what he had was mine and that what I had was his and whatever we had was together, it was to be ours for our old age and our security.'' Respondent denied this conversation. He also testified as to what happened when the joint savings account was opened. He stated that the major portion of the original $1,978 deposit came from the proceeds of the sale of certain Colorado property which had been paid for partially by money borrowed by him from his father, and partially by money taken from his earnings after marriage; that he told his wife to deposit it in a joint account; that she went to the bank with his approval and so deposited the

money; that he signed the bank card at home and knew that they were opening a joint account and that either party could draw out the money; that he intended if anything happened to him that she should get the money, and vice versa; that he never stated to his wife that the money received from the sale of the Colorado property was his separate property or was going to remain his separate property; that when he received money from his father "I considered that money my money"; that he told his wife to go out to the bank and open up a joint savings account, and that he knew what he was doing when he signed the card.

This is all of the evidence on this issue. It falls far short of proving an agreement by words or conduct that the money was to remain the separate property of the husband.  ■  He knowingly deposited his separate property in the joint tenancy account. The form of the account created a joint tenancy. That constituted a gift to his wife.  ■  While it is true that, as between husband and wife, at least while both are still alive, and the contest is between them, parol evidence is admissible to show an agreement that they intended that what appears to be joint tenancy property was to be the separate property of either or the community property of both, for this rule to apply there must be some relevant evidence of an agreement between the parties.  ■  The opening of a joint tenancy bank account by husband and wife creates a rebuttable presumption that the money therein is joint tenancy property. Either may rebut this presumption, but in the absence of rebutting testimony the presumption must prevail. These principles are well settled. (*Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Wallace* v. *Riley*, 23 Cal.App.2d 654 [74 P.2d 800]; *Copprell* v. *Copprell*, 87 Cal.App.2d 4 [195 P.2d 868].)

In the instant case there is no evidence at all that the parties intended that the joint account should be other than what it purports to be. It is true that respondent testified that originally most of the moneys going into the account were his separate property, but that falls far short of proving an agreement that it was to remain his separate property.  ■  Evidence as to the source of the funds standing alone, cannot rebut the presumption that the account was intended to be what it states it is—a joint tenancy account. In the instant case, neither the actions nor the words of the parties rebuts the presumption. That being so, the presumption must prevail. The finding contrary to it is unsupported.

There is no need for a retrial. The trial court is ordered to amend its findings, conclusions and judgment to provide that the joint savings account is held in joint tenancy by the parties and is divided equally between them. As so modified, the judgment is affirmed, appellant to recover her costs on this appeal.

Bray, J., and Wood (Fred B.), J., concurred.