[Civ. No. 20514.   Second Dist., Div. Three.   Apr. 14, 1955.]

NATALIE KALMUS, Respondent, v. CEDARS OF
LEBANON HOSPITAL, Appellant.

Spray, Gould & Bowers for Appellant.

Shacknove & Goldman for Respondent.

ASHBURN, J. pro tem.*—In this action for malpractice the trial was had without a jury, judgment was rendered for plaintiff for $3,000, and defendant appeals.

Appellant's counsel make three contentions: first, that the findings are fatally defective; second, that the evidence is insufficient to sustain the complaint allegation of specific negligence; and, third, that the court erred in denying recovery by defendant Cedars of Lebanon of its charge for use of its hospital and facilities during plaintiff's second stay there, while being treated for an infection which forms the basis of the malpractice charge and which was received during plaintiff's first visit to the hospital.

First as to the sufficiency of the findings.

Plaintiff's allegation of negligence is found in paragraph VI of the complaint. It says that defendant Jane Doe "while acting within the course and scope of her employment as a nurse, administered to plaintiff a hypodermic injection in her

---

*Assigned by Chairman of Judicial Council.

right thigh; the hypodermic needle and syringe used by the said Jane Doe in administering said injection were unsterile and unfit for the purpose for which they were used, and the said Jane Doe, while acting within the course and scope of her employment, did negligently and carelessly employ and make use of the aforesaid unsterile needle and syringe.'' The court found that ''one of the aforesaid nurses, while acting within the course and scope of their employment as such nurses, administered to plaintiff a hypodermic injection in her right thigh. . . . The aforesaid employees of the defendant did not exercise the care and skill required of them in the administration of the aforesaid hypodermic injection, and did not follow the procedure customarily followed by nurses following their profession in the Los Angeles area at said time. . . . As a direct and proximate cause of the negligence of the aforesaid employee nurses, or one of them, plaintiff's hip became infected . . .''; also in paragraph IX: ''Except as otherwise hereinabove specifically found, all of the allegations of plaintiff's Complaint are true and none of the allegations or denials of the Answer is true.'' And the findings contained no exception which has any bearing upon the problem now in hand.

Defendant filed a cross-complaint for recovery of $513.29, its charge for plaintiff's second stay in the hospital. In her answer thereto plaintiff repeated the allegations of paragraph VI of her complaint, above quoted, and the court found in paragraph X: ''Except as otherwise hereinabove specifically found, none of the allegations of the Cross-Complaint is true and all of the allegations of the Answer to the Cross-Complaint are true.'' Again the exception is without significance.

Appellant argues that the complaint was specific in charging as negligence only the use of unsterile and unfit needle and syringe; that the finding was limited to failure to follow the accepted standard of care in administering the injection; that the court therefore failed to find upon the negligence alleged and there is a fatal variance in that respect. Counsel rely upon *Frascona* v. *Los Angeles Ry. Corp.*, 48 Cal.App. 135 [191 P. 968], and similar cases, which do support their position to an extent if their assertion as to the condition of the findings be accepted. But findings IX and X have been overlooked by counsel.

They do encompass the issue of unsterile instruments and are sufficient findings upon the subject. ▮ It is not necessary for the court to follow the language of the pleadings

(24 Cal.Jur., § 213, p. 984). ■ And it has been held repeatedly that findings couched in such general terms as paragraphs IX and X herein are sufficient. (See *Gale* v. *Bradbury*, 116 Cal. 39, 40 [47 P. 778]; *County of San Diego* v. *Seifert*, 97 Cal. 594, 597 [32 P. 644]; *Estate of Scherer*, 58 Cal.App.2d 133, 138-139 [136 P.2d 103]; *Bole* v. *Lovejoy*, 138 Cal.App. 211, 215 [31 P.2d 1074]; *Wilbur* v. *Kemp*, 80 Cal. App.2d 787, 789 [182 P.2d 206]; *Rohl* v. *Van Cleve*, 90 Cal. App.2d 317, 322 [202 P.2d 807]; *Silver* v. *Shemanski*, 89 Cal. App.2d 520, 542 [201 P.2d 418]; Witkin on California Procedure, §§ 114-115, pp. 1846-1848.)

■ Concerning findings in form similar to those at bar the court said in *Chatfield* v. *Continental Bldg. & Loan Assn.*, 6 Cal.App. 665, 669 [92 P. 1040]: "And where the court, in such a case, makes a general finding, we do not think it is wholly lost because the court also undertakes to make, in addition to the general finding, certain specific findings upon facts covered by the general finding. The latter loses none of its certainty and clearness by specific findings." This is peculiarly pertinent here, for the general finding necessarily includes the matter of use of an unsterile needle. It may include more, but it clearly does cover that issue.

■ If it were true, as appellant claims, that failure to pursue accepted standards of care in other respects was outside the issues, the finding thereon would be surplusage, to be disregarded as such. (24 Cal.Jur., § 212, p. 983.)

■ But the parties may enlarge the issues by voluntarily canvassing at the trial a matter not technically included within the averments of the pleadings. When that occurs a finding on that subject is appropriate. (*Freeman* v. *Gray-Cowan, Inc.*, 219 Cal. 85, 87 [25 P.2d 415]; 24 Cal.Jur., § 210, p. 981.) At the instant trial the subject of accepted standards was opened on examination of Miss Huisman under section 2055, Code of Civil Procedure. She was defendant's director of nurses. No objection was made by defendant; both sides explored the subject and no claim was made in the trial court that the matter was outside the issues.

■ Lastly, it does not appear that appellant's counsel made any point in the trial court respecting the alleged insufficiency of the findings, or the need of a specific determination of the charge that an unsterile needle was used. The point was thereby waived. (*Goss* v. *Fanoe*, 114 Cal. App.2d 819, 824 [251 P.2d 337].)

■ In reviewing the claim of insufficiency of the evidence

to support the finding that an unsterile needle and syringe were used in giving the injection, we must, of course, resolve all conflicts in favor of respondent and indulge in all legitimate and reasonable inferences supporting plaintiff's case. (*Juchert* v. *California Water Serv. Co.,* 16 Cal.2d 500, 503 [106 P.2d 886].)

It appears that plaintiff entered defendant's hospital for observation and diagnosis on July 23, 1950. On the 24th at about 10 p. m. she was given an injection to relax her nerves. Her physical examination was negative on entrance to the hospital. The record of her case contains no indication of any infection prior to that time. And her regular physician testified that she had had no previous abscesses or blood disorder. Plaintiff said that the nurse, who seems to have been Miss Girouard, came into the room with the needle in her hand and gave the injection. "Q. What did she do to prepare you for the injection with the hypodermic needle? A. She didn't do anything. She just came in and jabbed the needle in my hip and pulled it out suddenly and sort of gasped, and then put it back in again and gave me the shot." This was in the right thigh. Standard practice requires not only that the instrument be sterilized but also that the skin be scrubbed with an alcohol sponge. Plaintiff's testimony warrants the inference that this was not done. She also said the place began to hurt and sting at once, began to swell, and by morning was badly swollen and red. Her physician, Dr. Louise Mand, saw it that morning, the 25th, and turned her over to Dr. Kahn. Dr. Mand testified that plaintiff then complained of a painful injection; that there was redness on the right thigh, a diffused redness, and the patient complained of pain. On the 27th, when plaintiff went home with Dr. Kahn's sanction, Dr. Mand found an abscess formation at the location of the injection and plaintiff's temperature was over 101. The hospital record of the 26th says: "Pt. has large inflamed area on rt. thigh, painful to touch." On the 28th, when she returned to the hospital, this notation was carried into the record: "Pt. received injection in thigh rt, which has since become swollen & tender and inguinal region is tender & swollen." The laboratory report says: "The culture showed a staphylococcus aureus hemolytic," which is a common organism often found upon the skin of a patient. The word abscess spells infection, and there is no real dispute that plaintiff did have an abscess. It was excised at the hospital where plaintiff remained until August 11th. Her return on

the 28th was caused by Dr. Mand's alarm about her condition.

Dr. Mand testified that the abscess was at the point of the injection, on the thigh, and in her opinion there certainly was a connection between the two. Defendant's witness, Dr. Ludwig Strauss, testified: "If an infection occurs at the point of an injection, would you say that there was or was not any connection between the two? A. I would say there was. Q. There was? A. Yes, sir." He also said he did not determine. the cause in this instance. But Dr. Mand supplied that information: "Q. . . . Can you say with any degree of medical certainty, reasonable medical certainty, that the abscess she complained of was caused by the hypodermic injection? A. Yes, I can. Q. You can? A. That could be the only causative factor. Q. It could be the only causative factor; is that true? A. That is correct." Again: "Q. Now, you have told us, doctor, that you can state with reasonable medical certainty that this abscess was caused by this injection; is that right? A. Yes, sir. Q. All right. Now, tell us, will you please, what there was about this injection that caused the abscess? A. A severe bruising might have caused it or an infected needle might have caused it. Q. A severe bruising might have caused it or an infected needle might have caused it? A. That's right. Q. Could anything else have caused it? A. No. Q. Nothing else; is that right? A. Not this abscess. Q. Not this abscess? A. No. Q. You are quite sure that this was—— A. I am very sure. Q. This was a very, very distinct type of abscess, wasn't it, doctor? A. Yes. It developed in the usual way of an infection through a bruise or an infection carried into the deeper tissues." There is no evidence of any bruising in this case, none that anyone saw or mentioned as a fact. And the only conclusion flowing from Dr. Mand's testimony is that the abscess was caused by use of an infected needle. We necessarily find that the evidence does support the allegation in that respect. This renders unnecessary any discussion of appellant's argument that plaintiff cannot prevail without the aid of res ipsa loquitur and that it does not apply here. For we have direct expert evidence that the use of an unsterile needle was the cause of the abscess. This same evidence disposes of appellant's alternative argument that there is no showing of any failure to follow standard hospital procedure. Obviously the use of an infected needle does violate that standard and the witnesses so testified.

Defendant cross-complained for recovery of $513.29,

a hospital bill for the period from July 28, 1950, to August 11, 1950, while she was being treated for the infection and abscess caused, as the court found, by negligence of defendant's nurse on July 24, 1950. The cross-complaint was in two common counts which the court found to be untrue; it also found with respect to the period covered by this bill that ". . . plaintiff was forced to and did necessarily return to the hospital for further treatment to eliminate the aforesaid infection, and did necessarily undergo a painful and serious operation, and suffered great pain and discomfort." Accordingly, recovery on the cross-complaint was denied. Appellant claims this was error, relying upon *Dameron* v. *Ansbro*, 39 Cal.App. 289, 300-301 [178 P. 874].

That case involved two actions which had been consolidated for trial; one was brought by a physician, Dr. Dameron, to recover for his professional services and "for room, board, and nurse hire furnished to Mr. Ansbro at his request in the sum of $490" (p. 301); the other action was brought by Ansbro against the doctor for malpractice. Judgment went for Ansbro. The appellate court held that the verdict was not without substantial support in the evidence, but reversed because of certain errors. At pages 300-301, it said: "We think the court should have instructed the jury as requested by appellant, that Dr. Dameron was entitled to recover the reasonable value of the use of the room and of board and nurse hire, regardless of the question whether he exercised ordinary care and skill in the treatment of the defendant. . . . There was no contention that the board and nurse hire, etc., were not reasonably worth the amount charged, and their value to respondent was not affected by any question of the correct treatment of the fractures. The jury should have been instructed to allow plaintiff credit for those items." Ansbro had been severely injured in an accident before Dr. Dameron's services were sought (p. 291); he needed hospitalization regardless of any question of subsequent negligence of the physician; the hospital was conducted by Dr. Dameron himself; and the reviewing court found that the value of "board and nurse hire, etc." to the patient Ansbro "was not affected by any question of the correct treatment of the fractures." In other words, he needed this hospital care for his injuries and that was true whether his surgeon was careful or negligent. The factual setting in the instant case is quite different. Mrs. Kalmus' second hospitalization was proximately caused by defendant's negligence. It would be a new

and surprising doctrine that would enable the tort feasor to recover from the injured party a part of the cost of curing his injuries. Had plaintiff gone to another hospital while being treated for the effects of defendant's negligence that expense would be recoverable from defendant in addition to the $3,000 awarded by the court. First principles demand that it not recover for the care in question.

Judgment affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.