[Civ. No. 17929.   First Dist., Div. Two.   Jan. 5, 1959.]

FONG HONG MAY, Respondent, v. FONG WAN et al., Appellants.

William E. Ferriter, Richard E. Macey and Czar S. Winters for Appellants.

Suren Toomajian, Franklin C. Stark, Stark & Champlin and Edward L. Barrett, Jr., for Respondent.

KAUFMAN, P. J.—This is an appeal from a judgment and decree of the Superior Court of Alameda County, granting a divorce to respondent Mrs. Helen Fong, also known as Fong Hong May. Mrs. Fong filed her complaint for divorce on the grounds of extreme cruelty in February 1954, and requested custody of the four minor children, support and maintenance for herself and the children, an equitable award of community property, attorneys fees and expense money. Appellant Dr. Fong Wan, also known as Fong Poy (hereafter referred to as Dr. Fong), answered and also cross-complained for divorce on the grounds of extreme cruelty. By order of the court,

Mrs. Fong was permitted to file a supplemental complaint which alleged that the two adult sons of Dr. Fong's first marriage, Richard and Edward, held in trust certain community property located in Oakland, which had been transferred to them without consideration and in fraud of Mrs. Fong's rights. The wives of Richard and Edward, Gracina and Amy, respectively, were also added as defendants to determine their claims. The supplemental complaint further named as party defendant, Leslie N. McReynolds, an accountant for Dr. Fong, and alleged that McReynolds had been named as trustee under a deed of trust by which Richard and Edward claimed a lien against certain community property, located in San Francisco, and that this deed of trust was given without consideration and in fraud of Mrs. Fong's rights. McReynolds is not a party to this appeal.

Richard and Edward denied Mrs. Fong's allegations, and by cross-complaint, sought to quiet title to the various properties in their names. Mrs. Fong answered with a denial; Dr. Fong with a disclaimer of any interest in the properties. After 11 days of trial, the court made findings of facts and conclusions of law, ordered Richard and Edward to refrain from disposing of the Oakland properties or using any of the rentals therefrom, and entered an interlocutory judgment and decree of divorce in favor of Mrs. Fong.

Dr. Fong, his sons Richard and Edward, and their wives appeal therefrom, contending that: (1) the trial court failed to make findings on all material issues; (2) the evidence is insufficient to support the findings and judgment; (3) the court erred in its determination of the community property of the parties and made an unjust, inequitable, arbitrary, and capricious division of such community property.

The parties were married on September 27, 1925, and separated on February 18, 1954. During the course of the marriage, Dr. Fong had been engaged in 25 to 30 businesses of different kinds, including night clubs and restaurants in San Francisco and Oakland, and his own business as a Chinese herb doctor in both cities. These business ventures were determined to be a part of the community property and awarded in their entirety to him. Dr. Fong had also acquired real property holdings of an approximate gross value of $1,350,000. These properties were awarded to Mrs. Fong, subject to outstanding federal and state tax liens in excess of $1,000,000. Of the eight children of the marriage, four were minors at the time of the trial. Mrs. Fong received cus-

tody of the children. This portion of the judgment is not challenged by the appellants.

At the time of the trial, Dr. Fong was delinquent for $12,700 in support and maintenance payments for Mrs. Fong and the children and $750 in accounting fees in violation of a court order. In further violation of court orders, Dr. Fong did not keep up the premium payments on certain life insurance policies. At the trial, Dr. Fong clearly indicated that he had no intention of complying with any court order with which he did not agree, and refused to sign bonds for the support of his minor children.

After a careful perusal of the voluminous record and briefs, we conclude that appellants' contentions are devoid of merit. Rather, the trial court is to be commended for reaching such a just result in the light of voluminous, intricate and conflicting evidence; witnesses requiring interpreters; abuse from Dr. Fong, and Dr. Fong's repeated assertions that he would not comply with the court's orders.

Appellants contend that findings of the trial court were not made upon all material issues and did not comply with the statute. ■■■ Findings by reference to the pleadings or paragraphs of the pleadings are adequate. (*Kalmus* v. *Cedars of Lebanon Hospital*, 132 Cal.App.2d 243 [281 P.2d 872]; *LaMar* v. *LaMar*, 30 Cal.2d 898 [186 P.2d 678].) ■■■ There is no authority for appellants' position that exact findings as to value are required in a case like this one. (See *Lamb* v. *Lamb*, 131 Cal.App.2d 489 [280 P.2d 793].)

■■■ Appellants' second contention that there is insufficient evidence to support respondent's right to a divorce on grounds of extreme cruelty, is not borne out by the record. While there is conflicting evidence on this issue, the record reveals ample substantial evidence to support the result reached by the trial court. ■■■ Where the evidence is conflicting, there is no function for the reviewing court to perform other than that of affirming the judgment. (*Clewett* v. *Clewett*, 136 Cal.App.2d 913 [289 P.2d 512].) ■■■ In determining whether certain acts and conduct constitute extreme cruelty, as defined by Civil Code, section 94, each case must be determined according to its particular circumstances. (*McFall* v. *McFall*, 58 Cal.App.2d 208 [136 P.2d 580].) ■■■ Respondent's testimony on the issue of extreme cruelty was sufficiently corroborated by the testimony of her daughter, Juanita. ■■■ The testimony of one witness entitled to credit is sufficient to establish a fact in a civil case. (*Leffingwell* v

*Faubion*, 89 Cal.App. 157, 160 [264 P. 306].)　In a hotly contested case the corroboration required is slight and its sufficiency is largely for the trial court. (*Jones* v. *Jones*, 135 Cal.App.2d 52 [286 P.2d 908].)

　Appellants contend that the trial court had no jurisdiction to award the parcels of real property located in San Francisco to Mrs. Fong as community property, as these properties were the separate property of Dr. Fong. They rely on Dr. Fong's testimony that these properties, although acquired in 1944, were bought with $150,000 in separate funds which Dr. Fong had held, in fact, since before the marriage. Dr. Fong's testimony was contradicted by Mrs. Fong, from statements given by Dr. Fong to Central Bank, and the amended 1944 federal income tax returns which referred to the properties as purchased with community funds.　An agreement as to the community nature of assets may be inferred from statements on the parties' income tax returns. (*Heck* v. *Heck*, 63 Cal.App.2d 470 [147 P.2d 110]; *Kenney* v. *Kenney*, 128 Cal.App.2d 128 [274 P.2d 951].)　Appellants' evidence was not sufficient to overcome the presumption of community property. See Civil Code, section 164, where the presumption is particularly strong in the case of a marriage as long as this one. (*In re Duncan's Estate*, 9 Cal.2d 207 [70 P.2d 174].) Even if appellants' evidence is viewed most favorably, records which might have been of assistance in tracing funds had either been burned or disappeared. [10] If separate property cannot be traced, commingled property is treated as community property. (*Mueller* v. *Mueller*, 144 Cal.App.2d 245 [301 P.2d 90].)

Appellants also rely on certain instruments prepared and signed by Mrs. Fong under Dr. Fong's direction, which establish the San Francisco properties as his separate property. Aside from Mrs. Fong's testimony that she couldn't read English and did not know what she signed, there is ample evidence to support the trial court's finding that these instruments were made and delivered only for the convenience of the husband in order to expedite management of the properties, and upon the oral understanding that Mrs. Fong was not relinquishing any rights therein.

　Appellants next argue that the Oakland properties were the assets of the partnership of Fong and Sons, or of Richard and Edward, and that the lien of the San Francisco properties was the property of Richard and Edward. The evidence indicates that when the Oakland properties were

acquired, Dr. Fong was not a citizen of the United States; Richard and Edward were. To avoid the effects of the Alien Land Law, Dr. Fong used various devices to permit him to acquire property. Dr. Fong made down payments on some of the properties as ''loans'' to the persons, who then received record title but never repaid the ''loans.'' Some of the properties were deeded to the sons and other, with the understanding that the property was held in trust for Dr. Fong and would be placed in his name whenever he wanted. Two financial statements, one dated 1933 and one dated 1934, stated that Dr. Fong held unrecorded deeds to some of the Oakland properties. Included among the properties held under unrecorded deeds were two parcels deeded to Richard and Edward as minors, in 1921 and 1923. At the trial, however, Richard and Edward claimed these parcels under 1955 deeds from Fong and Sons. When questioned about the financial statements at the trial, Dr. Fong stated he lied on the statements and usually lied when it was to his advantage.

Dr. Fong became a citizen in 1944. In 1945, the partnership of Fong and Sons was formed. Four of the San Francisco properties and all twelve Oakland properties were placed of record in the name of Fong and Sons. While the partnership records show that Dr. Fong owned a 70 per cent interest and Richard and Edward 15 per cent each, the evidence indicates that the partnership was simply another device through which Dr. Fong held titles to the properties of which he remained the true owner. Neither Richard nor Edward in 1945 owned the Oakland properties which they purported to exchange for the interest in the partnership, nor was any money of their own invested in these properties. Their 15 per cent interests were not gifts to them. Mrs. Fong never consented to any gifts to the sons as she did not, until the time of trial, know of the various transactions relating to the Oakland properties, or that funds from Dr. Fong's other businesses went into the Oakland properties. Dr. Fong completely dominated the partnership; he wrote all checks and had charge of all of its money and property. He used the partnership funds freely as his own, paid no interest on huge sums allegedly borrowed from the partnership, and paid no rent on certain properties which were supposedly those of the partnership.

The partnership was dissolved in 1954, while this divorce action was pending, pursuant to the plan of Dr. Fong and Richard and Edward to defeat Mrs. Fong's rights. Richard and Edward received nine parcels of real property in Oakland

and the balance due on another Oakland parcel which like two others had been sold. Dr. Fong also executed to them a note for $273,678.10, secured by a deed of trust on the three San Francisco properties. These transfers were made on a verbal agreement that after the divorce case was over, the property would be returned to Dr. Fong or Fong and Sons. On dissolution, there was no audit or appraisal of the partnership assets. The dissolution did not purport to follow the partnership agreement. Appellants could not explain the origin of the $273,678.10 charge against Dr. Fong. Appellants' accountant could not account for discrepancy of $100,000 in the partnership records.

From the above it is clear that there is evidence of fraud and the trial court properly distributed the Oakland properties to Mrs. Fong as community property and cancelled the deed of trust in the amount of $273,678.10. Nor can we find any indication that the trial court abused its discretion in the determination and distribution of the community property. (*Crouch* v. *Crouch*, 63 Cal.App.2d 747 [147 P.2d 678].)

There is no merit in appellants' further contentions that all appellants were not properly made defendants; that the pleadings did not properly put in issue the true ownership and equitable ownership of all of the properties; that Richard and Edward were "misled into not raising the defense of the statute of limitations."

We conclude that the judgment finds support in the record before us.

Judgment affirmed.

Draper, J., concurred.

DOOLING, J.—I concur in the judgment. However, I wish to elaborate my reason for agreeing with the somewhat cryptic statement in the opinion that: "There is no authority for appellants' position that exact findings as to value are required in a case like this one."

The only finding as to value is by reference to the first amended complaint. In paragraph VII of that complaint plaintiff alleges on information and belief that the community property is in excess of one million dollars in value. The finding is that all of the allegations of this paragraph are true. While the allegation is made on information and belief the finding is that this allegation is true. This is a sufficient finding of the fact alleged.

The more difficult question is presented by the fact that the court made no finding of the value of the property awarded to either party. Thus it is impossible to determine from the findings what proportion (by value) of the property the court awarded to either party.

The wife obtained the decree on the ground of extreme cruelty. She was thus entitled to receive more than one-half of the community property (*Harrold* v. *Harrold*, 43 Cal.2d 77, 82 [271 P.2d 489]) and the court in its discretion might have awarded all of the community property to her (*Barham* v. *Barham*, 33 Cal.2d 416, 431 [202 P.2d 289]).

Were the wife appealing she could properly complain that in the absence of a finding of the value of the respective properties awarded to each it could not be determined that she in fact received the more than one-half to which she is entitled. (*Villafuerte* v. *Villafuerte*, 125 Cal.App.2d 466, 469 [270 P.2d 526].) The husband, who is not entitled as of right to any particular portion of the community property, is in no such position to complain. (*Pope* v. *Pope*, 102 Cal.App. 2d 353, 372 et seq. [227 P.2d 867].)

A petition for a rehearing was denied February 4, 1959, and appellants' petition for a hearing by the Supreme Court was denied March 4, 1959.