Jennie J. CASWELL, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 7929.

United States District Court
N. D. California, N. D.

April 26, 1962.

Wareham C. Seaman, Lee M. Galloway and Richard W. Konig, Sacramento, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

This is an action to recover federal estate taxes alleged to have been overpaid by the estate of Wallace Caswell, deceased. The basic issue, and the only one with which this Court is presently concerned, involves the inclusion in decedent's gross estate of an alleged community property interest of decedent in a 160 acre ranch.

Plaintiff and decedent were married in 1910 and were husband and wife at the date of decedent's death in 1949. At the time of their marriage, plaintiff held in her own name certain shares of stock in the C. N. Whitmore Company, a family corporation, which had been acquired by her in 1906. Approximately six years after her marriage to decedent, plaintiff received the ranch properties in question in this action in exchange for her shares of stock in the C. N. Whitmore Company. The ranch properties stood of record in the name of plaintiff at the date of decedent's death.

On July 1, 1945, plaintiff and decedent executed an agreement which is the crux of this action. That agreement read as follows:

"This agreement executed by and between WALLACE CASWELL and JENNIE J. CASWELL, husband and wife,

"WITNESSETH

"That we are the owners of certain property both real and personal located in the State of California and we have always considered said property to be our community property and we make this agreement in order to reduce our understanding to writing.

"It is therefore mutually agreed between us that any and all property now owned by us in any manner is our community property in the same manner and to the same effect as if acquired by us after our marriage from our joint earnings as provided by the laws of the State of California.

"In witness whereof we have hereunto signed the above and foregoing agreement."

Plaintiff contends that this agreement was not intended to convert her separate property into community, and points out that during the course of probate proceedings with respect to decedent's estate she obtained an order relieving her separate property from the effect of the agreement. This Court has previously held that such order is not binding upon defendant. Defendant argues that the agreement did operate to convert plaintiff's real property (here in issue) into community property, one-half of which was properly includible in the gross estate of decedent.

It has been stipulated that plaintiff and decedent, during the years 1945, 1946 and 1947, executed and filed separate individual income tax returns; that both plaintiff and decedent reported on their separate returns net income consisting of rents, dividends and profits realized from

the properties standing in the name of each; and that in reporting the amount of net income subject to tax in each of said income tax returns, the total net yearly income from all of said property standing in the names of plaintiff and decedent, respectively, was computed as a single unit and exactly one-half of the sum so computed was stated to be the amount of net taxable income in each of the returns filed by plaintiff and decedent for the years above mentioned. Each such return contained a notation to the effect that said amount of net taxable income represented the taxpayer's one-half of the community income of both spouses. Each such return was prepared by or under the direction of decedent, and was not read by plaintiff. Plaintiff had no independent legal advice with respect to the execution of the returns and was totally unfamiliar with the tax law requirements of the United States.

During the course of administrative procedure, the Commissioner of Internal Revenue proposed, through his representatives, certain adjustments, including a reallocation of separate and community property reflected on returns for each of the above years. Decedent individually filed a protest on unrelated grounds, which was unsuccessful, and defendant determined eight adjustments, including a reallocation of community and separate income. A petition to the Tax Court of the United States was filed, drafted by legal counsel and signed by plaintiff as administratrix of the estate of Wallace Caswell (decedent). In its answer, defendant asserted that the property standing of record in the name of plaintiff or decedent was respectively her or his separate property rather than community property. Plaintiff conceded that issue. The Court promulgated its opinion January 18, 1952, and entered its decision May 5, 1952, commenting that computation was made on the basis that income from the real property in question in the present refund action was the separate income of plaintiff, and further that income from the real property standing of record in the name of decedent was the separate income of decedent. With respect, then, to the years above noted, plaintiff paid income taxes determined on the basis that the property standing of record in her name was her separate property.

On December 10, 1951, the Superior Court of the State of California, in and for the County of Stanislaus, ordered that the document of July 1, 1945 did not give decedent an interest in the separate property of plaintiff.[1] This Court has previously determined that said order is not binding upon defendant, which was unrepresented in that action (Wolfsen v. Smyth, 9 Cir., 223 F.2d 111; Newman v. Commissioner, 9 Cir., 222 F.2d 131). Plaintiff has the burden of establishing that said property was not community property (Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212).

This action is governed principally by the provisions of § 811(a) of the Internal Revenue Code of 1939, Title 26 U.S.C. That section reads as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death; * * *."

Preliminarily, it should be noted that the question of whether specific assets are separate or community property is a question of state law, to be determined in this case by the law of California (Beals v. Fontenot, 5 Cir., 111 F.2d 956). In determining the amount of the gross estate of a deceased spouse for purposes of the federal estate tax, state community property law is applicable (United States v. Goodyear,

---

1. This order was affirmed on appeal (See: Estate of Caswell, 152 Cal.App.2d 195, 312 P. 2d 703).

9 Cir., 99 F.2d 523; see also, Lang's Estate v. C.I.R., 9 Cir., 97 F.2d 867). It is conceivable, however, that under state law, a thing could be termed "community property" and yet the husband's real interest could be so insubstantial that nothing attributable to it could be included in his estate for federal estate tax purposes (United States v. Stewart, 9 Cir., 270 F.2d 894).

The property here in question was acquired by plaintiff as separate property (California Civil Code §§ 162 and 164). Decedent had no interest in said property (Civil Code § 157) unless he acquired such interest by the terms of the July 1, 1945 agreement. All evidences of ownership were exercised by plaintiff, and the property in question, although managed by decedent, was managed separately and apart from decedent's own separate property, and in the name of plaintiff. No instrument was introduced to the effect that the separate property acquired by plaintiff was converted into community property other than by means of the July 1, 1945 agreement.

██ In California, all that is needed for a conversion of separate property into community is an "agreement" between the parties (See: Woods v. Security First Nat. Bank, 46 Cal.2d 697, 299 P.2d 657; and Estate of Raphael, 91 Cal.App.2d 931, 206 P.2d 391). But implicit in the concept of such agreement is the requirement that both parties have a mutual understanding and intent as to the effect of such agreement. Such intent can be determined both from evidence and from the acts of the parties with relation to the agreement, and one particular source of discovery of intent is the statements on the parties' income tax returns (Fong Hong May v. Fong Wan, 166 Cal.App.2d 706, 333 P.2d 797; Nevins v. Nevins, 129 Cal.App.2d 150, 276 P.2d 655).

██ Plaintiff testified as to her general intention to retain what she referred to as the "Whitmore property" within the Whitmore family, inasmuch as no children were born of the marriage between plaintiff and decedent. Evidence was also introduced to the effect that plaintiff, in her dealings with tenants on the property in question, the Turlock Irrigation District, local taxing authorities and State inheritance tax authorities, both before and after July 1, 1945, consistently treated the parcels as her own. They were also so treated by the agencies themselves. Moreover, the determination in 1952 by the Tax Court that income from the property was separate income of plaintiff negates the argument that the property itself was community, since there was no showing that any agreement was had between plaintiff and decedent to convert income from community property into separate property.

The Government argues that the agreement of July 1, 1945 was not entered into evidence in the proceedings before the Tax Court, and that therefore its present contention that the property in issue is community property is not necessarily contradictory to its prior position. Such an argument cannot succeed, in view of the detriment suffered by plaintiff in paying income taxes on this property as separate property. Equity would not be served by allowing the Government to collect income taxes on separate property and estate taxes on community property, when dealing with the same land. In the final analysis, the Government must take a position and stick to it, rather than shifting ground as circumstances dictate.

██ In view of the conflicting determinations by the Commissioner of Internal Revenue, the presumption of correctness attending his determination must vanish, since it is patent that one or the other of such determinations is in error. Moreover, such a presumption is not evidence, and with the introduction of evidence opposed to the Commissioner's determination, the presumption of correctness is overcome (Lawrence v. Commissioner, 9 Cir., 143 F.2d 456; Hemphill Schools v. Commissioner, 9 Cir., 137 F.2d 961; and San Joaquin Brick Co. v. Commissioner, 9 Cir., 130 F.2d 220).

Defendant relies almost exclusively upon the July 1, 1945 document to support

its contention that the property in issue is community. As plaintiff points out, this is a single document, drafted by her attorney husband, not explained to her, and which she did not understand. Defendant points out that the language of the agreement, which was drafted by decedent, leaves little doubt as to his intention to convert all properties into community property, but it is not decedent's intention with which we are concerned. Even the language of plaintiff at trial cited by defendant points to an understanding by plaintiff that, while the beneficial enjoyment of the proceeds of the property might be turned into community property, the property itself would "revert back" to each party separately upon the death of either of them. While decedent may (or may not—we are not here concerned with his understanding) have intended that the July 1, 1945 document acted to convert all property of both parties from separate to community, and because of such understanding may have intended that his separate property be converted into community, the fact that plaintiff received decedent's (formerly separate) property as community has no relevance in determining the status of plaintiff's property under said document. Particularly is this true in view of the fact that decedent was an attorney, and as such would be presumed to know of the legal effects of a conversion of separate property into community.

Defendant points out that plaintiff's contention that income from separate property of married persons can be community in California if the parties so agree is contrary to settled principles of income tax law which prohibit an assignment of income without transfer of the corpus from which it is produced (Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L. Ed. 731; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; and see Florence v. Cruickshank, 23 B.T.A. 493). While such is the status of the law, plaintiff herself cannot be assumed to have known it, and her clear intention, although impossible of fulfillment, cannot be revised by this Court to fit within the framework of the law. If plaintiff's understanding must be found to be incorrect, such a finding does not require a revision of such understanding to coincide with the legal climate. It is still the intention of the plaintiff with which we are concerned, and if such intention be found to be incapable of completion, then the document expressing it must be held inapplicable to the property here involved. This Court will not presume to inform plaintiff what she should in fact have intended.

This conclusion patently follows from a reading of the July 1, 1945 document itself. The wording of the document is in the plural (e. g. "we are the owners"; "we have always considered"; "property now owned by us in any manner"), and can easily be interpreted to refer only to property held of record in the names of both decedent and plaintiff. Notable in this regard is the language to the effect that "we have always considered said property to be our community property and we make this agreement in order to reduce our understanding to writing." Decedent and plaintiff owned certain real property in joint tenancy, which property defendant considers to be one-half in the taxable estate of decedent, and which treatment plaintiff does not dispute. It is entirely conceivable, and even probable, that such joint tenancy property was all that was intended to be changed in status as a result of the document. The document purported merely to specifically define the existing status of property included within its ambit as community property, and did not purport to affect the separate property of the parties. Additional support for such interpretation is to be noted in the failure of decedent, the draftsman and a trained attorney, to use language relating to "all property" or "each and every parcel" in the descriptive passage of the document.

Whether, in an abstract study, the document could be interpreted as converting separate property of all types into community property need not be considered here. Said document can be ef-

fective as an agreement, if at all, only to the extent that it was understood by the parties, and the evidence is clear that plaintiff did not understand it to convert her separate property into community property. Therefore there was no agreement between plaintiff and decedent, and hence no conversion of plaintiff's separate property into community property. The real property here involved is the separate property of the plaintiff, and, as such, should not be included in decedent's gross estate. Under these circumstances, plaintiff is entitled to the relief which she seeks by this action.

IT IS, THEREFORE, ORDERED that judgment be entered in this action in favor of the plaintiff and against the defendant, as prayed for by plaintiff;

AND IT IS FURTHER ORDERED that plaintiff prepare findings of fact and conclusions of law, a form of judgment, and all other documents necessary for the complete disposition of this case, in accordance with the provisions of this memorandum and order, and lodge such documents with the Clerk of this Court, pursuant to the applicable rules and statutes.